POMERANTZ LLP
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ORINDO DORIN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> EXSCIENTIA P.L.C., ANDREW HOPKINS, BEN R. TAYLOR, and DAVID NICHOLSON, <br><br> Defendants. | Case No. <br><br> CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS <br><br> <u>JURY TRIAL DEMANDED</u> <br><br> <u>CLASS ACTION</u> |

Plaintiff Orindo Dorin ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public

documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Exscientia p.l.c. ("Exscientia" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Exscientia securities between March 23, 2022, and Febraury 12, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Exscientia in an artificial intelligence ("AI") driven Pharma-tech company that engages in the design and develop differentiated medicines for diseases with high unmet patient needs.

3.     At all relevant times, the Company purported to "***maintain[] the highest standards of business conduct and ethics***" and, to that end, adopted a Code of Business Conduct and Ethics which applies to all of its employees, officers and directors, including former Chief Executive Officer ("CEO") and Director Defendant Andrew Hopkins ("Hopkins"), former Chairman of the Company's Board of Directors (the "Board") Defendant David Nicholson ("Nicholson"), and all other executive and senior officers.[1]

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendant Hopkins had engaged in improper relationships with employees that were inconsistent with the Company's standards and values; (ii) Defendant Nicholson had prior knowledge of Defendant Hopkins's relationships and had improperly addressed Hopkins's misconduct without consulting the Board; (iii) the Company's maintenance and enforcement of its Code of Business Conduct and Ethics was inadequate to safeguard against the foregoing conduct; (iv) the foregoing failures subjected the Company to a heightened risk of disruptive leadership transitions and/or reputational harm; and (v) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

---

[1] All emphases included herein are added unless otherwise indicated.

5.    On February 13, 2024, Exscientia issued a press release "announc[ing] that its Board of Directors (the 'Board') has decided to terminate the employment of [Defendant] Hopkins as the Company's [CEO] and Principal Executive Officer, and to remove Dr. Hopkins from his role as an Executive Director of the Board, in each case for cause and effective immediately." The press release further revealed that the Board's decision was taken following an investigation which found that Defendant Hopkins had "engaged in relationships with two employees that the Board determined were inappropriate and inconsistent with the Company's standards and values." In addition, the press release indicated that during the course of the investigation, the Board learned that "[Defendant] Nicholson [. . .] had prior knowledge of the existence of the earlier of Dr. Hopkins' relationships and had addressed the situation directly, and with the involvement of other outside counsel, rather than in consultation with the Board," and "[f]ollowing discussions with the Board, on February 12, 2024 Dr. Nicholson tendered his resignation from his positions with the Company."

6.    On this news, Exscientia's stock price fell $1.72 per share, or 22.9%, to close at $5.79 per share on February 13, 2024.

7.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **JURISDICTION AND VENUE**

8.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Pursuant to Exscientia's most recent Annual Report filed with the SEC, as of December 31, 2023, there were 125,702,396 of the Company's ordinary shares outstanding.  Exscientia's American Depository Shares ("ADSs") and common stock trade on the Nasdaq Global Select Market ("NASDAQ").   Accordingly, there are presumably hundreds, if not thousands, of investors in Exscientia securities located within the U.S., some of whom undoubtedly reside in this Judicial District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

12.    Plaintiff, as set forth in the attached Certification, acquired Exscientia securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.    Defendant Exscientia is a United Kingdom public limited company with its principal executive offices located at The Schrodinger Building, Oxford Science Park, Oxford, United Kingdom, OX4 4GE.  Exscientia's securities trade in an efficient market on the NASDAQ under the ticker symbol "EXAI".

14.    Defendant Hopkins served as the Company's CEO and as a Director at all relevant times.

15.    Defendant Ben R. Taylor ("Taylor") has served as the Company's Chief Financial Officer, Chief Strategy Officer, and Executive Director at all relevant times.

16.    Defendant Nicholson served as the Company's Chairman of the Board at all relevant times.

17.    Defendants Hopkins, Taylor, and Nicholson are sometimes referred to herein as the "Individual Defendants."

18.    The Individual Defendants possessed the power and authority to control the contents of Exscientia's SEC filings, press releases, and other market communications.    The Individual Defendants were provided with copies of

Exscientia's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Exscientia, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.   The Individual Defendants are liable for the false statements and omissions pleaded herein.

19.    Exscientia and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.    Exscientia in an AI driven Pharma-tech company that engages in the design and develop differentiated medicines for diseases with high unmet patient needs.

21.    At all relevant times, the Company purported to "maintain[] the highest standards of business conduct and ethics" and, to that end, adopted a Code of Business Conduct and Ethics which applies to all of its employees, officers and

directors, including former CEO Defendant Hopkins, former Chairman of the Board

Defendant Nicholson, and all other executive and senior officers.

## Materially False and Misleading Statements Issued During the Class Period

22.     The Class Period began on March 23, 2022, when Exscientia filed an

Annual Report on Form 20-F with the SEC, reporting the Company's financial and

operational results for the year ended December 31, 2021 (the "2021 20-F").   In

discussing the risks related to the Company's employee matters, the 2021 20-F

stated, in relevant:

> ***Our future success depends on our ability to retain key executives and to attract, retain and motivate qualified personnel.***
>
> We are highly dependent on the research and development, clinical, financial, operational, scientific, software engineering and other business expertise of our executive officers, as well as the other principal members of our management, scientific, clinical and software engineering teams. Although we have entered into employment agreements with our executive officers, each of them may terminate their employment with us at any time. We do not maintain "key person" insurance for any of our executives or other employees.
>
> The loss of the services of our executive officers or other key employees could impede the achievement of our development and sales goals in our software business and the achievement of our research, development and commercialisation objectives in our drug discovery business. In either case, the loss of the services of our executive officers or other key employees could seriously harm our ability to successfully implement our business strategy. Furthermore, replacing executive officers and key employees may be difficult and may take an extended period of time because of the limited number of individuals with the breadth of skills and experience required to successfully develop, gain regulatory approval of, and commercialise products in the life sciences industry.

This was plainly a catch-all provision not sufficiently tailored to meet the known and/or foreseeable risks facing Exscientia as a result of the Company's inadequate employment policies.

23.     Further, in providing an overview of the Company's team and culture, the 2021 20-F stated, in relevant part:

> We have gathered a team of world-class scientists and technologists that work collaboratively across the entire drug development process. They are led by a management team with deep industry experience.
>
> ***
>
> ### *Our Culture*
>
> We believe that people are our most important assets. We believe that our focus on creating a collaborative, entrepreneurial and innovative culture with a non-hierarchical approach is a key reason for our success.
>
> We aim to inspire our employees to act as entrepreneurs in their areas of specialty and to continuously strive for innovation and excellence in fulfilling their duties. Cultural fit is a key part of our recruiting process as we look to hire individuals who always want to challenge themselves, who take risks and who are bought into our vision of being impatient for patients. We reward people who take initiative and regard failure as an opportunity to learn and inform improved approaches.

24.     In addition, in listing the Company's executive officers and non-executive directors, the 2021 20-F stated that the Company believed that Defendant Hopkins's "extensive experience in the healthcare industry and being a founder of our company qualifies him to serve on our board of directors," and that Defendant

Nicholson's "extensive experience in the healthcare industry qualifies him to serve on our board of directors."

25.    Next, in providing an overview of the Company's nomination and corporate governance committee, the 2021 20-F stated, in relevant part:

> Our nomination and corporate governance committee is composed of Elizabeth Crain, *[Defendant] Nicholson* and Mario Polywka, and assists our board of directors in identifying individuals qualified to become members of our board and executive officers consistent with criteria established by our board and in developing our corporate governance principles. *[Defendant] Nicholson serves as chairman of the nomination committee*.
>
> The nomination and corporate governance committee's responsibilities include:
>
> - drawing up selection criteria and appointment procedures for directors;
>
> - reviewing and evaluating the size and composition of our board and making a proposal for a composition profile of the board of directors at least annually;
>
> - recommending nominees for election to our board of directors and its corresponding committees;
>
> - *assessing the functioning of individual members of our board of directors and executive officers and reporting the results of such assessment to the board of directors*; and
>
> - developing and recommending to the board rules governing the board, reviewing and reassessing the adequacy of such rules governing the board and recommending any proposed changes to the board of directors.

26.    Finally, the 2021 20-F made reference to Exscientia's Code of Business Conduct and Ethics, which the Company stated is "applicable to all of [its] employees, officers and directors."  The Company's Code of Business Conduct and Ethics states, in relevant part:

> This Code of Business Conduct and Ethics (this "Code") flows directly from our commitment to our mission and core values. We are committed to maintaining the highest standards of business conduct and ethics. Our combined efforts will enable us to make the right decisions that provide value and benefit our employees and shareholders as well as our shareholders, collaboration partners, and external stakeholders. It is unacceptable to cut legal or ethical corners for the benefit of EXSCIENTIA PLC ("Exscientia") or for personal benefit.
>
> This Code is intended to deter wrongdoing as well as the appearance of wrongdoing. Doing the right thing is more important than winning while risking our reputation or the trust of our shareholders, collaboration partners, and external shareholders.
>
> This Code is designed to ensure we:
>
> - operate our business ethically and with integrity;
>
> - avoid actual or apparent conflicts of interest;
>
> - comply with the letter and spirit of all laws and Exscientia policies, including full, fair, accurate, timely and understandable disclosure in reports and documents we file with the U.S. Securities and Exchange Commission (the "SEC") and in our other public communications; and
>
> - promptly internally report suspected violations of this Code.
>
>                                          ***
>
> **Honest and Ethical Conduct**

11

> Consistent with our core values, Exscientia personnel must act and perform their duties ethically, honestly and with integrity – doing the right thing even when "no one is looking." This includes acting responsibly in our relationships with shareholders, collaboration partners, key opinion leaders, investigators, regulatory entities, partners, suppliers, vendors, investors and the public. We commit to only what we can do and we deliver on our commitments. No winks. No nods.

27.    On March 23, 2023, Exscientia an Annual Report on Form 20-F, reporting the Company's financial and operational results for the year ended December 31, 2022 (the "2022 20-F").  The 2022 20-F contained substantively similar descriptions of the Company's risks with respect to employee matters, team and culture, and executive officers and non-executive directors, nomination and corporate governance committee as discussed, *supra*, in ¶¶ 22-25.  Further, the 2022 20-F also incorporated of the Company's Code of Business Conduct and Ethics described, *supra*, in ¶ 26.

28.    The statements referenced in ¶¶ 22-27 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendant Hopkins had engaged in improper relationships with employees that were inconsistent with the Company's standards and values; (ii) Defendant Nicholson had prior knowledge of Defendant Hopkins's relationships and had improperly addressed Hopkins's misconduct without

consulting the Board; (iii) the Company's maintenance and enforcement of its Code of Business Conduct and Ethics was inadequate to safeguard against the foregoing conduct; (iv) the foregoing failures subjected the Company to a heightened risk of disruptive leadership transitions and/or reputational harm; and (v) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

### **The Truth Emerges**

29.     On February 13, 2024, Exscientia issued a press release announcing its Board's decision to terminate the employment of Defendant Hopkins as CEO and Principal Executive Officer and that Defendant Nicholson would be resigning as Chairman of the Board.  Specifically, the press release stated, in relevant part:

> Exscientia [. . .] today announces that its Board of Directors (the "Board") has decided to terminate the employment of Andrew Hopkins as the Company's Chief Executive Officer and Principal Executive Officer, and to remove Dr. Hopkins from his role as an Executive Director of the Board, in each case for cause and effective immediately. The Board's decision was taken following an investigation which found that Dr. Hopkins had engaged in relationships with two employees that the Board determined were inappropriate and inconsistent with the Company's standards and values. The Nominating and Corporate Governance Committee of the Board is instituting a search for Dr. Hopkins' successor as Chief Executive Officer.
>
> Dr. Hopkins' conduct did not impact the Company's consolidated financial statements or its internal controls over financial reporting, and his termination is unrelated to the Company's operational or financial performance. The Company remains committed to advancing its internal oncology pipeline and broad partnership portfolio through AI-based drug design and laboratory technologies.

\*\*\*

A special committee of the Board engaged outside counsel to undertake the investigation into Dr. Hopkins' conduct. During the course of the investigation, the Board learned that David Nicholson, Chairman of the Board, had prior knowledge of the existence of the earlier of Dr. Hopkins' relationships and had addressed the situation directly, and with the involvement of other outside counsel, rather than in consultation with the Board. Following discussions with the Board, on February 12, 2024 Dr. Nicholson tendered his resignation from his positions with the Company as a Non-Executive Director of the Board and the Chairman of the Board. The Nominating and Corporate Governance Committee of the Board is instituting a search for a director to replace Dr. Nicholson on the Board.

30.    On this news, Exscientia's stock price fell $1.72 per share, or 22.9%, to close at $5.79 per share on February 13, 2024.

31.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

32.    During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the Company's securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Exscientia securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Exscientia or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Exscientia;

- whether the Individual Defendants caused Exscientia to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Exscientia securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

16

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

39.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Exscientia securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Exscientia securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

40.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

42.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

43.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they

were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Exscientia securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Exscientia securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

45.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Exscientia securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Exscientia's finances and business prospects.

46.    By virtue of their positions at Exscientia, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of

the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

47.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Exscientia, the Individual Defendants had knowledge of the details of Exscientia's internal affairs.

48.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Exscientia.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Exscientia's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Exscientia securities was artificially inflated throughout the Class

Period.  In ignorance of the adverse facts concerning Exscientia's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Exscientia securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

49.    During the Class Period, Exscientia securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Exscientia securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Exscientia securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Exscientia securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

50.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

52.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.     During the Class Period, the Individual Defendants participated in the operation and management of Exscientia, and conducted and participated, directly and indirectly, in the conduct of Exscientia's business affairs.  Because of their senior positions, they knew the adverse non-public information about Exscientia's misstatement of income and expenses and false financial statements.

54.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Exscientia's financial condition and results of operations, and to

correct promptly any public statements issued by Exscientia which had become materially false or misleading.

55.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Exscientia disseminated in the marketplace during the Class Period concerning Exscientia's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Exscientia to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Exscientia within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Exscientia securities.

56.    Each of the Individual Defendants, therefore, acted as a controlling person of Exscientia.  By reason of their senior management positions and/or being directors of Exscientia, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Exscientia to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Exscientia and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

57.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Exscientia.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  April 26, 2024                    Respectfully submitted,

                                          POMERANTZ LLP

                                          */s/ Thomas H. Przybylowski*
                                          Thomas H. Przybylowski

Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

# CERTIFICATION PURSUANT
# TO FEDERAL SECURITIES LAWS

1.      I, Orindo Dorin, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Exscientia plc ("Exscientia") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Exscientia securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Exscientia securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in Exscientia securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.


**Executed**  04 / 20 / 2024
             **(Date)**


                                    _____
                                              **(Signature)**


                                     **Orindo Dorin**_____
                                    **(Type or Print Name)**

Doc ID: 604ae7f267f63043d1645426fa5afcd2d383d201

**Exscientia plc (EXAI)**                                                      **Orindo Dorin**

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 4/21/2022 | 470 | $12.5000 |
| Purchase | 5/5/2022 | 1,000 | $9.7800 |
| Purchase | 5/20/2022 | 1,000 | $10.2600 |
| Purchase | 5/25/2022 | 30 | $9.9000 |
| Purchase | 5/25/2022 | 30 | $9.9000 |
| Purchase | 5/25/2022 | 180 | $9.9000 |
| Purchase | 5/25/2022 | 270 | $9.9000 |
| Purchase | 5/25/2022 | 100 | $9.9000 |
| Purchase | 5/25/2022 | 12 | $9.9000 |
| Purchase | 5/25/2022 | 9 | $9.9000 |
| Purchase | 5/25/2022 | 18 | $9.9000 |
| Purchase | 5/25/2022 | 320 | $9.9000 |
| Purchase | 5/25/2022 | 22 | $9.9000 |
| Purchase | 5/25/2022 | 1 | $9.9000 |
| Purchase | 5/25/2022 | 2 | $9.9000 |
| Purchase | 5/25/2022 | 2 | $9.9000 |
| Purchase | 5/25/2022 | 4 | $9.9000 |
| Purchase | 10/28/2022 | 500 | $7.2300 |
| Purchase | 10/28/2022 | 1,800 | $7.2500 |
| Purchase | 10/28/2022 | 200 | $7.2500 |
| Purchase | 10/28/2022 | 200 | $7.2200 |
| Purchase | 10/28/2022 | 400 | $7.2200 |
| Purchase | 10/28/2022 | 400 | $7.2200 |
| Purchase | 10/28/2022 | 800 | $7.2200 |
| Purchase | 10/28/2022 | 100 | $7.2400 |
| Purchase | 10/28/2022 | 100 | $7.2400 |
| Purchase | 10/28/2022 | 100 | $7.2400 |
| Purchase | 10/28/2022 | 200 | $7.2200 |
| Purchase | 10/28/2022 | 75 | $7.2500 |
| Purchase | 10/28/2022 | 26 | $7.2400 |
| Purchase | 10/28/2022 | 99 | $7.2150 |
| Purchase | 12/6/2022 | 48 | $5.1000 |
| Purchase | 12/6/2022 | 100 | $5.1000 |
| Purchase | 12/6/2022 | 100 | $5.1000 |
| Purchase | 12/6/2022 | 100 | $5.1000 |
| Purchase | 12/6/2022 | 100 | $5.1000 |
| Purchase | 12/6/2022 | 100 | $5.1000 |
| Purchase | 12/6/2022 | 100 | $5.1000 |
| Purchase | 12/6/2022 | 100 | $5.1000 |
| Purchase | 12/6/2022 | 100 | $5.1000 |
| Purchase | 12/6/2022 | 100 | $5.1000 |
| Purchase | 12/6/2022 | 100 | $5.1000 |
| Purchase | 12/6/2022 | 100 | $5.1000 |
| Purchase | 12/6/2022 | 100 | $5.1000 |
| Purchase | 12/6/2022 | 100 | $5.1000 |
| Purchase | 12/6/2022 | 100 | $5.1000 |
| Purchase | 12/6/2022 | 100 | $5.1000 |
| Purchase | 12/6/2022 | 300 | $5.1000 |
| Purchase | 12/6/2022 | 1,100 | $5.1000 |
| Purchase | 12/6/2022 | 41 | $5.1000 |

**Exscientia plc (EXAI)**                                                          **Orindo Dorin**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 12/6/2022 | 636 | $5.1000 |
| Purchase | 12/6/2022 | 16 | $5.1000 |
| Purchase | 12/6/2022 | 1,256 | $5.1000 |
| Purchase | 12/6/2022 | 66 | $5.1000 |
| Purchase | 12/6/2022 | 3 | $5.1000 |
| Purchase | 12/6/2022 | 34 | $5.1000 |
| Purchase | 1/20/2023 | 50 | $5.8100 |
| Purchase | 1/20/2023 | 300 | $5.8100 |
| Purchase | 1/20/2023 | 479 | $5.8100 |
| Purchase | 1/20/2023 | 180 | $5.8100 |
| Purchase | 1/20/2023 | 360 | $5.8100 |
| Purchase | 1/20/2023 | 64 | $5.8100 |
| Purchase | 1/20/2023 | 42 | $5.8100 |
| Purchase | 1/20/2023 | 600 | $5.8100 |
| Purchase | 1/20/2023 | 60 | $5.8100 |
| Purchase | 1/23/2023 | 1,148 | $5.8000 |
| Purchase | 1/23/2023 | 455 | $5.8000 |