# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE EXSCIENTIA P.L.C. SECURITIES LITIGATION<br><br>This Document Relates To: All Actions | Master File No. 1:24-cv-05692-RMB-AMD<br><br>CLASS ACTION<br><br>Filed Electronically<br><br>Motion Day: May 19, 2025<br>Judge: Hon. Renée Marie Bumb<br>Courtroom: 3D |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

COOLEY LLP
Brian M. French (*pro hac vice*)
Sarah M. Lightdale (*pro hac vice*)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000
bfrench@cooley.com
slightdale@cooley.com

Elizabeth M. Wright (*pro hac vice*)
500 Boylston Street, 14th Floor
Boston, MA 02116
Telephone: (617) 937-2300
ewright@cooley.com

SAUL EWING LLP
Sarah A. Sullivan
Alexander L. Callo
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 01702-5426
Telephone: (973) 286-6700
sarah.sullivan@saul.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................1

I.    PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE
MISSTATEMENT .........................................................................................1

    A.    The Code Of Conduct ........................................................................1

    B.    The Culture, Diversity, And Inclusion Statements ............................5

    C.    The Risk Disclosures.........................................................................7

    D.    The Board Committee Charters..........................................................9

    E.    The SOX Certifications ...................................................................10

II.    PLAINTIFFS FAIL TO PLEAD SCIENTER...............................................11

    A.    Plaintiffs Concede There Is No Motive .............................................11

    B.    Plaintiffs Do Not Allege Conscious Misbehavior Or
Recklessness In Making The Challenged Statements.......................11

    C.    Plaintiffs Ignore The Most Compelling Inference ............................13

III.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION..............................13

IV.    PLAINTIFFS FAIL TO PLEAD A SECTION 20(A) CLAIM ..................15

CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abira Med. Lab'ys, LLC v. Nat'l Ass'n of Letter Carriers Health Benefit Plan*,
2024 WL 1928680 (D.N.J. Apr. 30, 2024)......................................................3

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
532 F. Supp. 3d 189 (E.D. Pa. 2021)............................................................4

*In re Am. Int'l Grp. 2008 Sec. Litig.*,
741 F. Supp. 2d 511 (S.D.N.Y. 2010) ...........................................................8

*In re Aurora Cannabis Sec. Litig.*,
2021 WL 2821167 (D.N.J. July 6, 2021) ......................................................14

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017) ...........................................................4

*Brooks-McCollum v. Emerald Ridge Serv. Corp.*,
563 F. App'x 144 (3d Cir. 2014) .................................................................15

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) .....................................................................3

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) ......................................................................3

*In re Campbell Soup Sec. Litig.*,
2020 WL 7022655 (D.N.J. Nov. 30, 2020) ..................................................13

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
403 F. Supp. 3d 712 (D. Minn. 2019).........................................................4

*City of Fort Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems*,
683 F. Supp. 3d 120 (D. Mass. 2023)..........................................................4

*Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*,
433 F. Supp. 3d 515 (S.D.N.Y. 2020) ...............................................2, 5, 7, 8

# TABLE OF AUTHORITIES
## continued

**Page(s)**

*Craig v. Target Corp.*,
  2024 WL 4979234 (M.D. Fla. Dec. 4, 2024) ..................................................9, 10

*Das v. Rio Tinto PLC*,
  332 F. Supp. 3d 786 (S.D.N.Y. 2018) ......................................................13

*Diabat v. Credit Suisse Grp. AG*,
  2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024) ..................................................14

*Emps. Ret. Sys. of St. Louis v. Jones*,
  2021 WL 1890490 (S.D. Ohio May 11, 2021)......................................................9

*In re Flag Telecom Holdings Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) ......................................................14

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007) ......................................................3

*In re Galena Biopharma Sec. Litig.*,
  117 F. Supp. 3d 1145 (D. Or. 2015)......................................................12

*Garfield v. Shutterfly*,
  857 Fed. App'x 71 (3d Cir. 2021) ......................................................15

*Kooker ex rel. Hecla Mining Co. v. Baker*,
  497 F. Supp. 3d 1 (D. Del. 2020)......................................................9, 10

*Holwill v. AbbVie*,
  2020 WL 5235005 (N.D. Ill. Sept. 1, 2020)......................................................4

*Howard v. Arconic*,
  2021 WL 2561895 (W.D. Pa. June 23, 2021) ..................................................8, 12

*In re Interpool Sec. Litig.*,
  2005 WL 2000237 (D.N.J. Aug. 17, 2005) ......................................................13

*In re ITT Educ. Servs. Sec. & S'holder Derivatives Litig.*,
  859 F. Supp. 2d 572 (S.D.N.Y. 2012) ......................................................8

iii

# TABLE OF AUTHORITIES
### continued

**Page(s)**

*Lapin v. Goldman Sachs Grp.*,
   506 F. Supp. 2d 221 (S.D.N.Y. 2006) ..............................................................4, 6

*Lawlor v. ESPN Scouts, LLC*,
   2011 WL 675215 (D.N.J. Feb. 16, 2011) ..............................................................7

*Lopez v. CTPartners Exec. Search*,
   173 F. Supp. 3d 12 (S.D.N.Y. 2016) ....................................................................5

*Lormand v. US Unwired*,
   565 F.3d 228 (5th Cir. 2009) ................................................................................8

*Martin v. GNC Holdings*,
   757 F. App'x 151 (3d Cir. 2018) ........................................................................11

*Meyer v. Jinkosolar Holdings Co.*,
   761 F.3d 245 (2d Cir. 2014) ..................................................................................8

*In re Moody's Corp. Sec. Litig.*,
   599 F. Supp. 2d 493 (S.D.N.Y. 2009) ...................................................................4

*Murray v. Cnty. of Hudson*,
   2021 WL 2221398 (D.N.J. June 2, 2021)............................................................15

*In re NAHC Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002) ..............................................................................15

*In re Novastar Fin. Sec. Litig.*,
   2005 WL 1279033 (W.D. Mo. May 12, 2005)......................................................12

*Nykredit Portefølje Admin. A/S v. Propetro Holding Corp.*,
   2021 WL 9037758 (W.D. Tex. Sept. 13, 2021) .....................................................4

*Okla. L. Enf't Ret. Sys. v. Papa John's Int'l*,
   444 F. Supp. 3d 550 (S.D.N.Y. 2020) ...............................................................5, 7

*In re Petrobras Sec. Litig.*,
   116 F. Supp. 3d 368 (S.D.N.Y. 2015) ...................................................................6

iv

# TABLE OF AUTHORITIES
## continued

**Page(s)**

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
845 F.3d 1268 (9th Cir. 2017) ..................................................................2

*In re Riddell Concussion Reduction Litig.*,
77 F. Supp. 3d 422 (D.N.J. 2015) ...........................................................8

*SEC v. Desai*,
145 F. Supp. 3d 329 (D.N.J. 2015).........................................................12

*SEC v. Falstaff Brewing Corp.*,
629 F.2d 62 (D.C. Cir. 1980)...................................................................9

*Shapiro v. UJB Fin. Corp.*,
964 F.2d 272 (3d Cir. 1992) ..................................................................15

*In re Signet Jewelers Ltd. Sec. Litig.*,
2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018).............................3, 4, 12

*In re Tellium Sec. Litig.*,
2005 WL 2090254 (D.N.J. Aug. 26, 2005) ...........................................14

*In re Tenaris S.A. Sec. Litig.*,
493 F. Supp. 3d 143 (E.D.N.Y. 2020) .....................................................4

*In re Toronto-Dominion Bank Sec. Litig.*,
2018 WL 6381882 (D.N.J. Dec. 6, 2018)....................................3, 10, 11

*In re Valeant Pharms. Int'l Sec. Litig.*,
2024 WL 1975499 (D.N.J. May 3, 2024).............................................13

**Statutes**

15 U.S.C. § 78u-5(i)(1)(B).......................................................................6

**Other Authorities**

Federal Rule of Civil Procedure 9(b).......................................................3

Local Civil Rule 15.1 .............................................................................15

v

## INTRODUCTION

This is not a case about a company failing to live up to its stated values. It is a case about a company doing what it said it would—and being sued anyway. Exscientia said it would act on reported misconduct. The Amended Complaint ("AC")[1] admits it did. That should end the matter.

The Opposition does not change that. It still does not specify what Hopkins did—let alone when, where, how often, or how it rendered any statement false. It still ignores overwhelming authority holding that general statements about corporate culture and values are inactionable. And it still confirms that Exscientia investigated and acted, just as it said it would.

This is not a close call. The AC fails to plead an actionable misstatement, scienter, and loss causation. It should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT

#### A. The Code Of Conduct

This case fails at the threshold: The AC alleges Exscientia *enforced* its Code of Conduct. Plaintiffs concede the Code does not guarantee misconduct will never

---

[1] Previously defined terms have the same meaning as in Defendants' motion to dismiss ("MTD"). "Opposition" or "Opp'n" refers to Plaintiffs' opposition to Defendants' MTD. Unless otherwise noted, all emphasis is added, and all internal citations, quotations marks, and alterations are omitted.

occur. Ex. A; *see* Opp'n at 30. The Code states that reported misconduct will be investigated and addressed—exactly what the AC says happened. According to the AC, FE1 reported Hopkins to Nicholson; Nicholson engaged outside counsel; an internal investigation ensued; and Hopkins was terminated. ¶¶ 60-61, 75, 128. That does not show an "unwritten policy" of non-enforcement. *See* Opp'n at 17. It confirms that Exscientia enforces its Code, even against a "superstar CEO." *Id.* at 2. And Plaintiffs themselves call the outcome "nearly inevitable." *Id.* at 26.

Plaintiffs also cannot escape the case law. Defendants' MTD lists numerous cases holding that codes of conduct are inactionable puffery: inherently aspirational, effectively required, and not guarantees of compliance. MTD at 9-14. Plaintiffs' footnoted attempt to distinguish a few of them falls flat. *See* Opp'n at 19 n.8. *Cognizant* involved a code publicly posted on the company's website. *See* Amended Complaint ¶¶ 52, 56, 132, 133, *In re Cognizant Tech. Sols. Sec. Litig.*, No. 2:16-cv-06509 (D.N.J. Apr. 7, 2017), ECF No. 38. *Hewlett-Packard* held that "the [code of conduct], and the statements within the Class Period promoting it, were transparently aspirational." *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017). *CBS* involved vastly more "pervasive" misconduct than is alleged here. *Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 526-29, 530-40 (S.D.N.Y. 2020) (describing decades of sexual harassment and assault, as well as destruction of evidence). And

*Toronto-Dominion* simply did not turn on *which* executive violated the code. *In re Toronto-Dominion Bank Sec. Litig.*, 2018 WL 6381882, at *11 (D.N.J. Dec. 6, 2018) ("This Court finds the Code is inactionable. To the extent that Plaintiffs' claim is based on the Code acting as a representation by TD Bank that the Code is not being violated by its employees, it is inactionable."). Each case is on point.

Nor can Plaintiffs overcome the AC's silence on what Hopkins actually did. They argue Rule 9(b) permits them to rely on vague labels such as "toxic behavior" and "harassment"—without alleging what happened, when, where, how often, or how it violated the Code.[2] Opp'n at 19-20. That is not enough. Rule 9(b) demands particularized facts, not buzzwords. *E.g.*, *Frederico v. Home Depot*, 507 F.3d 188, 200-01 (3d Cir. 2007); *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155 (3d Cir. 2004); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1417-18 (3d Cir. 1997).

Plaintiffs' own cases only underscore the weakness of this one. *See* Opp'n at 14-15. In *Signet*, the company claimed to enforce its code, but 250 employee declarations detailed "rampant" sexual harassment and zero enforcement. *In re*

---

[2] Plaintiffs even resort to making up new allegations. The AC mentions only two women—FE1 and FE2—but the Opposition invents a third. *See* Opp'n at 2. That is improper. *E.g.*, *Abira Med. Lab'ys, LLC v. Nat'l Ass'n of Letter Carriers Health Benefit Plan*, 2024 WL 1928680, at *4 (D.N.J. Apr. 30, 2024) ("It is axiomatic . . . that a pleading cannot be amended by a brief in opposition to a motion to dismiss.").

3

*Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *6, *17 (S.D.N.Y. Nov. 26, 2018). In *Bradesco*, the company touted "effective" anti-bribery policies while running a decade-long bribery scheme. *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 658-60 (S.D.N.Y. 2017). Here, the AC alleges (at most) isolated misconduct by a single executive—and concedes it was investigated and addressed. That is nowhere close to the facts in *Signet* and *Bradesco*.[3] Nor can Plaintiffs bridge the gap by calling Hopkins' conduct "systematic," Opp'n at 4-6; no facts support that label.

---

[3] Plaintiffs' other cases are equally inapposite. Each involved detailed allegations of systemic misconduct that directly contradicted the challenged statements—and in many cases, the companies failed to enforce their policies or, worse, actively facilitated their violation. *See, e.g.*, *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 222-24 (E.D. Pa. 2021) (company operated under "unwritten policy" contrary to code); *Nykredit Portefølje Admin. A/S v. Propetro Holding Corp.*, 2021 WL 9037758, at *15-17 (W.D. Tex. Sept. 13, 2021) ("pervasive 'tone at the top'" and misconduct by top executives contradicted internal controls); *Holwill v. AbbVie*, 2020 WL 5235005, at *4 (N.D. Ill. Sept. 1, 2020) (kickback scheme contradicted statements about sales and marketing practices); *In re CenturyLink Sales Pracs. & Sec. Litig.*, 403 F. Supp. 3d 712, 728 (D. Minn. 2019) (plaintiffs alleged company "systemically" violated its code); *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 508 (S.D.N.Y. 2009) (extensive allegations of client influence contradicted statements touting organization's independence); *Lapin v. Goldman Sachs Grp.*, 506 F. Supp. 2d 221, 240 (S.D.N.Y. 2006) ("pervasive conflicts" contradicted statements touting company's independence); *City of Fort Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems*, 683 F. Supp. 3d 120, 134 (D. Mass. 2023) (company "promoted and harbored" misconduct in violation of code); *In re Tenaris S.A. Sec. Litig.*, 493 F. Supp. 3d 143, 158-59 (E.D.N.Y. 2020) (distinguishing inactionable aspirational statements from specific language disavowing bribes "under any circumstances").

Plaintiffs also misstate the law. They claim puffery cannot be resolved on the pleadings. Opp'n at 15-16, 23. But courts do so routinely, and Plaintiffs do not even try to distinguish Defendants' code of conduct cases doing exactly that. *See* MTD at 11-12 (collecting cases). Statements about "culture," "integrity," and "maintaining the highest standards of business conduct and ethics" are classic puffery. *Id.*[4]

Finally, Plaintiffs suggest that statements "made in the wake of the MeToo Movement" are somehow different. Opp'n at 16. That is wrong. Even in *CBS*—with decades of misconduct and explosive public reporting—the court *still* found that virtually every statement about culture and values was puffery. *CBS Corp.*, 433 F. Supp. 3d at 526-29, 530-40. The sole exception was the CEO's false denial of public allegations swirling around him. *Id.* at 539-40. There is nothing comparable here.

B.     The Culture, Diversity, And Inclusion Statements

These statements fail for the same reason as the Code: The AC alleges Exscientia upheld its stated values by investigating and terminating Hopkins. ¶ 18. That makes the statements true—not false. *See* MTD at 15.

---

[4] *See also CBS Corp.*, 433 F. Supp. 3d at 533 ("committed to maintaining the highest standards in everything we do" is puffery); *Okla. L. Enf't Ret. Sys. v. Papa John's Int'l*, 444 F. Supp. 3d 550, 561 (S.D.N.Y. 2020) ("ensur[ing] a working environment 'free of harassment or other . . . behavior based' on race and gender" is puffery); *Lopez v. CTPartners Exec. Search*, 173 F. Supp. 3d 12, 28 (S.D.N.Y. 2016) ("promot[ion of] an inclusive and positive working environment" is puffery).

5

Plaintiffs cannot dispute that these statements mirror puffery in the case law.[5] *Id.* at 15-16 (collecting cases). So instead, they repeat that puffery "should not be decided on the pleadings," and that the global #MeToo "context" transforms general aspirations into concrete, verifiable statements of fact. Opp'n at 23. As explained above, that is incorrect. *Supra* Part I.A.

Plaintiffs also argue that none of the statements were forward-looking under the PSLRA safe harbor. Opp'n at 21-23. But the statute explicitly defines forward-looking statements to include "statement[s] of the plans and objectives of management." 15 U.S.C. § 78u-5(i)(1)(B). That is exactly what many of these statements were. *E.g.*, ¶ 102 ("We *will* continue to work . . . . "); ¶ 106 ("We *will* respect the human rights . . . ."); ¶ 114 ("we *will* continue to focus on them to help improve the diversity of our workforce"). The AC pleads no facts suggesting anyone at Exscientia had actual knowledge the statements were false (because they were not). MTD at 16-17.

And Plaintiffs outright ignore Defendants' argument that several statements were inactionable opinions. *See* MTD at 17 n.8. Their silence concedes the point.

---

[5] Plaintiffs' cases are readily distinguishable. *See In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015) (statements about integrity and internal controls were made to reassure investors while executives engaged in a broad corruption scheme and retaliated against whistleblowers); *Lapin*, 506 F. Supp. 2d at 240 (defendant aggressively touted its independence despite "pervasive conflicts").

*E.g.*, *Lawlor v. ESPN Scouts, LLC*, 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011).

      C.     <u>The Risk Disclosures</u>

Plaintiffs' challenge to Exscientia's 2022-2023 risk disclosures also fails. Opp'n at 24-27. Those disclosures warned of potential commercial harm from losing key personnel and reputational harm from misconduct becoming public. But neither risk materialized until 2024—long after the disclosures at issue. MTD at 17-19. That is dispositive.

Courts consistently hold that risks tied to investigative outcomes do not materialize until the investigation concludes. *See, e.g.*, *CBS Corp.*, 433 F. Supp. 3d at 536-37 (risk of CEO ouster did not materialize until investigation concluded); *Papa John's*, 444 F. Supp. 3d at 563 ("Even if the risk that [the CEO] would be disgraced or fired increased with the expanding influence of the #MeToo movement, an increase in a risk does not mean the risk has already come to pass, such that a disclosure that simply identifies the risk would be misleading. Statements regarding [the CEO's] importance to the Company were not misleading for having omitted unadjudicated allegations that might one day lead to his ouster." (cleaned up)). Here, the AC alleges the investigation concluded and Hopkins was terminated in February 2024. ¶¶ 128-133. It would have been "strange—and irresponsible—for [Exscientia] to publicly predict the outcome of its independent investigation into [Hopkins]

7

before the investigation was complete." *CBS Corp.*, 433 F. Supp. 3d at 537.[6]

Plaintiffs try to sidestep this rule by speculating that Hopkins' termination was "nearly inevitable" by August 2022. Opp'n at 26. But the AC never says that;[7] it says only that the risk "increased." ¶ 97. That is not enough. MTD at 18-19; *see CBS Corp.*, 433 F. Supp. 3d at 538. What's more, the AC declares (albeit conclusorily) that "Exscientia had an unwritten policy of condoning" misconduct, ¶ 97—flatly contradicting this new position that termination was "inevitable." *See In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 437 (D.N.J. 2015) (dismissing for "failing to articulate a consistent basis for their assertions of false advertising").

Finally, Plaintiffs ignore their own allegation that the risk disclosures were "boilerplate." ¶¶ 99, 101. If true, that makes them immaterial. *E.g.*, *In re ITT Educ. Servs. Sec. & S'holder Derivatives Litig.*, 859 F. Supp. 2d 572, 580 (S.D.N.Y. 2012) ("These statements are precisely the type of vague, *boilerplate* pronouncements that no reasonable investor would substantially rely upon.").

---

[6] Plaintiffs' cases concerned risks of events that had already occurred—unlike here, where Plaintiffs concede that no key personnel left or reputational harm occurred before February 2024. *See Howard v. Arconic*, 2021 WL 2561895, at *6 (W.D. Pa. June 23, 2021) (misleading to disclose risk of event that had already transpired); *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014) (same); *Lormand v. US Unwired*, 565 F.3d 228, 247 (5th Cir. 2009) (same); *In re Am. Int'l Grp. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 531 (S.D.N.Y. 2010) (same).

[7] Even were it alleged, "a conclusory allegation that [the CEO's] departure was 'imminent' is insufficient to render the Risk Disclosures misleading." *CBS Corp.*, 433 F. Supp. 3d at 537.

D.    The Board Committee Charters

Plaintiffs say it is misleading to list director responsibilities unless every director performs them perfectly. Opp'n at 27-30. That is not the law.

Again, Exscientia's charters do not guarantee flawless performance. They outline high-level responsibilities—such as "communicat[ing]" with management, "evaluat[ing]" management, and making "recommendations"—not assurances that directors will always get it right. MTD at 19; Exs. G, H, I. The same was true in *Kooker*. *See Kooker ex rel. Hecla Mining Co. v. Baker*, 497 F. Supp. 3d 1, 7 (D. Del. 2020) (dismissing statements that "do nothing more than recite the directors' responsibilities," and "do not state or suggest that the directors . . . adequately" performed them). Plaintiffs try to distinguish *Kooker* by suggesting it turned on a failure to allege enough facts. Opp'n at 30 n.13. But *Kooker*'s primary holding was that merely reciting director responsibilities is not a representation "that the directors . . . adequately" performed them. 497 F. Supp. 3d at 7. So too here.

Plaintiffs' cases—*Falstaff*, *Jones*, and *Target*—only confirm the point. Those companies claimed to have entire committees or specific monitoring systems that did not exist. *See SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 75 (D.C. Cir. 1980) (audit committee was "nonexistent"); *Emps. Ret. Sys. of St. Louis v. Jones*, 2021 WL 1890490, at *8-9, *14 (S.D. Ohio May 11, 2021) (board claimed to "overs[ee] lobbying and political participation activities" while concealing "bribery scandal");

9

*Craig v. Target Corp.*, 2024 WL 4979234, at *9 (M.D. Fla. Dec. 4, 2024) (board claimed to monitor potential "Pride Month Campaign backlash" when it never did). Plaintiffs allege no such thing here. Exscientia had the committees it said it had, and the Board did what its charters described.

Nor do Plaintiffs plead particularized facts showing that Nicholson failed to perform any specific duty (*e.g.*, generally communicating, evaluating, or recommending). They simply assert that he should have communicated, evaluated, or recommended *differently*. ¶¶ 118-127. That is not securities fraud. *See Kooker*, 497 F. Supp. 3d at 7.

In any event, the AC alleges that, in response to FE1's (unspecified) report,[8] Nicholson engaged outside counsel, an internal investigation ensued, and Hopkins was terminated. ¶¶ 60-61, 75, 128. Plaintiffs' dissatisfaction with that process is legally irrelevant.

### E.   The SOX Certifications

Plaintiffs' SOX-certification theory fails for a simple reason: It requires a materially false or misleading statement in Exscientia's SEC filings. There was none. That defeats the claim. This is consistent with *Toronto-Dominion*, which

---

[8] Notably, Plaintiffs do not contend that FE1 followed the Code's reporting procedure, which would have called for concerns to be reported to Exscientia's Compliance Officer—not to Nicholson. Ex. A at 4.

allowed a SOX-certification theory to proceed only because an SEC filing contained a materially false or misleading statement. 2018 WL 6381882, at *10, *11-12.

## II.   PLAINTIFFS FAIL TO PLEAD SCIENTER

Plaintiffs' Opposition only reinforces that they have not and cannot plead a strong inference of scienter. They allege no motive. They identify no particularized facts showing conscious misbehavior or recklessness in making the challenged statements. And they ignore the most obvious inference from the AC: Exscientia meant what it said.

### A.   Plaintiffs Concede There Is No Motive

Plaintiffs do not dispute that the AC alleges no motive. Opp'n at 35-37. Nor do they contest that Hopkins and Nicholson increased their stock holdings during the Class Period—when they supposedly knew the stock price was inflated. *Id.* That combination creates a compelling inference *against* scienter. MTD at 24-25.

### B.   Plaintiffs Do Not Allege Conscious Misbehavior Or Recklessness In Making The Challenged Statements

Lacking motive, Plaintiffs must plead even stronger circumstantial evidence of scienter. MTD at 25-26 (collecting cases). They do not.

*First*, they allege no facts showing Defendants knew, or were reckless in not knowing, that any statement was misleading. *See Martin v. GNC Holdings*, 757 F. App'x 151, 153-54 (3d Cir. 2018). Instead, they conflate allegations of one individual's isolated misconduct with knowledge that statements about *company-*

11

*wide* values were false. The two are not the same. The AC alleges no facts suggesting

Hopkins or Nicholson disbelieved the challenged statements when made.

*Second*, any claim of a "cover up" fails on its face. *See* Opp'n at 34. The AC

alleges that, in response to FE1's (unspecified) report, Nicholson engaged outside

counsel, and an internal investigation ensued. ¶¶ 60-61, 75, 128. That is no "cover

up"—and Plaintiffs' cases demonstrate why. In *Desai*, the defendant fabricated

account statements. *SEC v. Desai*, 145 F. Supp. 3d 329, 333 (D.N.J. 2015).

In *Galena*, the defendants manipulated trading to mask a pump-and-dump scheme.

*In re Galena Biopharma Sec. Litig.*, 117 F. Supp. 3d 1145, 1156, 1165 (D. Or. 2015).

In *Novastar*, the defendants denied regulatory scrutiny while under investigation.

*In re Novastar Fin. Sec. Litig.*, 2005 WL 1279033, at *5-6 (W.D. Mo. May 12,

2005). In *Arconic*, the defendants touted false safety ratings while concealing that

theirs had been "downgraded." 2021 WL 2561895, at *2-3, *20. And in *Signet*,

the defendants "retaliated against women who attempted to anonymously report"

pervasive, company-wide sexual misconduct. 2018 WL 6167889, at *6.[9] There is

nothing remotely similar here.

---

[9] And even in those dramatically different circumstances, *Signet* still held that "generalized statements touting the importance of Signet's relationship with its employees and consumer trust in the Signet brand" were "the sort of broad, aspirational, and vague puffery statements that no reasonable investor could possibly consider significant in making investment decisions." 2018 WL 6167889, at *18.

12

*Third*, Hopkins' and Nicholson's departures do not support scienter. *See* Opp'n at 35. Executive departures matter only when they reinforce an already-strong inference. *E.g.*, *In re Interpool Sec. Litig.*, 2005 WL 2000237, at *17 (D.N.J. Aug. 17, 2005). But there is no such inference here. And the AC alleges no facts suggesting either departure "resulted from [Defendants'] knowing or reckless involvement in a fraud." *In re Campbell Soup Sec. Litig.*, 2020 WL 7022655, at *10 (D.N.J. Nov. 30, 2020); *see Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 815 (S.D.N.Y. 2018) ("The fact that [company] fired [executive] says nothing of [executive's] state of mind."). If anything, the internal investigation and termination confirm every challenged statement was true.

    C.    <u>Plaintiffs Ignore The Most Compelling Inference</u>

Plaintiffs insist there is no competing inference. Opp'n at 35-38. But the AC supports only one inference: Defendants believed their statements were true. They believed Exscientia cared about its values and would act on misconduct—and they were right. ¶¶ 128-129.

## III.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

Plaintiffs do not plead loss causation because the February 13, 2024 press release did not reveal the "pertinent truth" they allege was concealed. *See In re Valeant Pharms. Int'l Sec. Litig.*, 2024 WL 1975499, at *2 (D.N.J. May 3, 2024).

13

Although a corrective disclosure need not precisely mirror the alleged fraud, Opp'n at 39, it must at least "reveal[] the falsity of the alleged misrepresentation." *In re Aurora Cannabis Sec. Litig.*, 2021 WL 2821167, at *15 (D.N.J. July 6, 2021). This one did not. It said nothing about "sexual harassment," a "toxic work environment," or any other of the AC's buzzwords. *E.g.*, ¶¶ 12, 103. It did not even mention the Code of Conduct. *See Diabat v. Credit Suisse Grp. AG*, 2024 WL 4252502, at *151 (S.D.N.Y. Sept. 19, 2024) ("A disclosure cannot correct something that it does not even talk about."). All it said was that Hopkins had been terminated for relationships "inappropriate and inconsistent with [Exscientia's] standards and values." Ex. E at 2-3. That did not correct the challenged misstatements—it confirmed Exscientia meant every word of them. And a stock drop following news of executive turnover does not establish loss causation. *See In re Tellium Sec. Litig.*, 2005 WL 2090254, at *4 (D.N.J. Aug. 26, 2005) ("[L]oss causation is not pled upon allegations of drops in stock price following an announcement of bad news that does not disclose the fraud.").

Worse still, Plaintiffs contradict themselves. They allege the press release revealed the truth—but also that it was false. ¶¶ 128-133; *see* MTD at 29. "Plaintiffs cannot have it both ways." *In re Flag Telecom Holdings Sec. Litig.*, 574 F.3d 29, 41 (2d Cir. 2009). As a matter of law and logic, a disclosure cannot be both false and corrective.

14

## IV.    PLAINTIFFS FAIL TO PLEAD A SECTION 20(a) CLAIM

Plaintiffs' Section 10(b) claim fails, so their Section 20(a) claim does too. *See Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 279 (3d Cir. 1992).

## <u>CONCLUSION</u>

For these reasons and those in Defendants' MTD, the AC should be dismissed with prejudice. Plaintiffs offer only a cursory request for leave to amend. Opp'n at 40. They do not say what they would change, and they have not submitted "a copy of the proposed amended pleading," as Local Civil Rule 15.1 requires. L. Civ. R. 15.1; *see In re NAHC Sec. Litig.*, 306 F.3d 1314, 1333 (3d Cir. 2002). That alone is reason to deny leave. *See, e.g.*, *Murray v. Cnty. of Hudson*, 2021 WL 2221398, at *3-4 (D.N.J. June 2, 2021); *see also Brooks-McCollum v. Emerald Ridge Serv. Corp.*, 563 F. App'x 144, 147-48 (3d Cir. 2014). Amendment would also be futile. New allegations cannot transform puffery into fraud or make a company liable for doing what it said it would. *See Garfield v. Shutterfly*, 857 Fed. App'x 71, 82 (3d Cir. 2021). Defendants respectfully request that the Court dismiss the AC with prejudice.

15

Dated: May 8, 2025                    Respectfully submitted,


                                      By: /s/ Sarah A. Sullivan
                                      **SAUL EWING LLP**
                                      Sarah A. Sullivan
                                      Alexander L. Callo
                                      One Riverfront Plaza
                                      1037 Raymond Blvd., Suite 1520
                                      Newark, NJ 01702-5426
                                      Telephone: (973) 286-6700
                                      Facsimile: (973) 286-6800
                                      sarah.sullivan@saul.com

                                      **COOLEY LLP**
                                      Brian M. French (*pro hac vice*)
                                      Sarah M. Lightdale (*pro hac vice*)
                                      55 Hudson Yards
                                      New York, NY 10001-2157
                                      Telephone: (212) 479-6000
                                      Facsimile: (212) 479-6275
                                      bfrench@cooley.com
                                      slightdale@cooley.com

                                      Elizabeth M. Wright (*pro hac vice*)
                                      500 Boylston Street, 14th Floor
                                      Boston, MA 02116
                                      Telephone: (617) 937-2300
                                      Facsimile: (617) 937-2400
                                      ewright@cooley.com


                                      *Attorneys for Defendants*

16