1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

IN RE EXSCIENTIA P.L.C.                    CIVIL ACTION NUMBER:

SECURITIES LITIGATION                      1:24-cv-05692-RMB-AMD


                                           Motion Hearing

_____

Mitchell H. Cohen Building & U.S. Courthouse
4th and Cooper Streets
Camden, New Jersey 08101
Tuesday, September 16, 2025
Commencing at 11:11 a.m.

**B E F O R E:**                THE HONORABLE RENÉE MARIE BUMB,
                                CHIEF UNITED STATES DISTRICT JUDGE


**A P P E A R A N C E S:**

THE ROSEN LAW FIRM, P.A.
BY:  SARA FUKS, ESQUIRE (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
For the Plaintiff

SAUL EWING, LLP
BY:  SARAH ANN SULLIVAN, ESQUIRE
One Riverfront Plaza, Suite 1520
Newark, New Jersey 07102
For the Defendant


            John J. Kurz, Federal Official Court Reporter
                  John_Kurz@njd.uscourts.gov
                        (856)576-7094

    Proceedings recorded by mechanical stenography; transcript
            produced by computer-aided transcription.


*United States District Court*
*District of New Jersey*

**A P P E A R A N C E S:** (Continued)

COOLEY LLP
BY:  ELIZABETH M. WRIGHT, ESQUIRE (*pro hac vice*)
500 Boylston Street, 14th Floor
Boston, MA 02116
For the Defendant

COOLEY LLP
BY:  BRIAN M. FRENCH, ESQUIRE (*pro hac vice*)
55 Hudson Yards
New York, New York 10001-2157
For the Defendant


**Also Present:**

Arthur Roney, The Courtroom Deputy

Michael O'Leary, Judicial Law Clerk

*3*

(PROCEEDINGS held in open court before The Honorable Renée Marie Bumb, Chief United States District Judge, at 11:11 a.m. as follows:)

THE COURTROOM DEPUTY:  All rise.

THE COURT:  All right.  Good morning.  You can all have a seat.  Thank you.

Okay.  How do you say the name, Exscientia?  Yes?

MS. WRIGHT:  That's correct.

THE COURT:  All right.  So we are here in the *In Re Exscientia* case.  The docket is 24-5692.  So let me start with appearances for the plaintiff.

MS. FUKS:  Good morning, Your Honor.  Sara Fuks for plaintiffs from the Rosen Law Firm.

THE COURT:  Okay.  You're admitted pro hac?

MS. FUKS:  I'm admitted pro hac.

THE COURT:  So we require the appearance of local counsel.  Did you not know that?

MS. FUKS:  I reviewed the rules and I did not see that provision.  I realize that may have been in the pro hac.

THE COURT:  Yeah.

MS. FUKS:  It is the same firm, the Rosen Law Firm, that is local counsel.

THE COURT:  Any objection to allowing Ms. Fuks to argue it today or should I adjourn it and have local counsel appear?

MS. SULLIVAN:  No objection, Your Honor.

THE COURT:  It is a requirement.  So in the future, if you'd please be aware that local counsel --

MS. FUKS:  I apologize, Your Honor.  Thank you for letting me appear today.

THE COURT:  Okay.  All right.  For the defendants.

MS. SULLIVAN:  Good morning, Your Honor.  Sarah Sullivan from Saul Ewing.  And I'll let my co-counsel from Cooley introduce themselves.

THE COURT:  Okay.

MS. WRIGHT:  Elizabeth Wright from Cooley LLP.

MR. FRENCH:  And Brian French, also from Cooley, for the defendants.

THE COURT:  Okay.  All right.  Good morning.

MR. FRENCH:  Good morning.

THE COURT:  And you'll be arguing it?

MS. WRIGHT:  Yes, Your Honor.

THE COURT:  Ms. Wright, okay.

All right.  So this is on the defendant's motion, so I'll hear you.  I'll start with you, Ms. Wright.

MS. WRIGHT:  Do you want me to come to the podium?

THE COURT:  Yes, please.  Thank you.

MS. WRIGHT:  So I think it might be helpful to take a step back and address what remains in the case after your order in August dismissing the code-of-conduct claims and the

statements referencing the code in the SEC filings and the annual reports. So what's left?

The alleged class period is a two-year period from March 2022 to February 2024, and there's really just three dates in that period that matter. So the first one is March 23, 2022, and that's when the Form 20-F was filed for 2021. And that form refers to the Charters. It includes the risk disclosures. It has a SOX certification, and it has a very general statement about commitment to diversity. So those are sort of the four remaining buckets of claims.

The next important date in the class period is a year later, March 23, 2023. And it's another Form 20-F with nearly identical statements in those four categories.

And then the third date in the alleged class period is April of 2023. And that's when the gender pay gap report for 2022 was issued.

So really the alleged misstatements come in these two routine SEC filings, the Form 20-Fs, and then the gender pay gap report. And then there's two important timing pieces that I want to note here.

One, we don't know when the alleged inappropriate behavior took place. The amended complaint alleges that FE1, Former Employee 1, told Mr. Nicholson about the alleged inappropriate behavior in August of 2022. So that's five months after the first Form 20-F was filed. And then that

employee, Former Employee 1, left the company in December of 2022.  So she was no longer an employee at the time of the second Form 20-F being filed.

And we don't know, based on the amended complaint, what she reported to Mr. Nicholson.  And we don't know, you know, to what extent it was focused just on her and specific details related to her.  And so it's not really clear how the Form 20-F filed after she left the company might be false.

Plaintiffs focus quite a bit on this Former Employee 1 in the amended complaint, but really their allegations boil down to "fraud by hindsight."

The reality is that the statements --

THE COURT:  They boil down to what?

MS. WRIGHT:  Fraud by hindsight.

The reality is that the statements that they allege to be false because of the company -- or related to the company's disclosure in February of 2024 in the press release that the company issued when it said that Mr. Hopkins was terminated and Mr. Nicholson had resigned.

So plaintiffs have a triple-layer burden here, right?  They have to meet Rule 8.  They have to meet Rule 9(b).  They have to meet the PSLRA.

(Court reporter clarification.)

MS. WRIGHT:  Rule 8, Rule 9(b), and the PSLRA.  So they have the burden of showing what statements were false and

then the who, what, when, where, right?  The basics of a newspaper story, and they have not done that here.

So all the Court is left with is a theory that really could be applied to any company that determines an executive has not comported himself to the company's standards and decides to terminate that executive.

But the failure to predict the future isn't securities fraud, right?  The securities laws don't require clairvoyance.  They require reasonable disclosures of material information.

And as we said in our briefing, this is not a case about a company not living up to its standards.  Exscientia did exactly what it said it would do in this case and investigated the misconduct that had been reported and then it made termination decisions.

Plaintiffs are really trying to punish a company for doing the right thing.  And from a policy perspective, I think we would all have a lot of heartburn about making law where a company's disclosure of misconduct, you know, something bad that happens, puts the company in an actually worse position. That would turn the securities laws on its head.

THE COURT:  Can I ask you some specific questions?

First, I want to focus on the risk disclosure statement.

MS. WRIGHT:  Sure.

THE COURT:  So your position, as I understand it, is that the risks don't materialize until termination, right?

MS. WRIGHT:  Until the February 2024 press release, correct.

THE COURT:  Yeah.  If Nicholson knew the complaints earlier, does that make it misleading by omission?

MS. WRIGHT:  It does not, Your Honor.

THE COURT:  Why?

MS. WRIGHT:  So --

THE COURT:  Why?  Tell me why.

MS. WRIGHT:  So first, the amended complaint doesn't allege what Mr. Nicholson was told in August of 2022.  And we really need to focus on what the risks are.  So paragraph 105 of the amended complaint --

THE COURT:  All right.  Let me go to it, because I really want to focus on what the complaint avers.

Okay.

MS. WRIGHT:  So in paragraph 105, the amended complaint alleges that the risk disclosures were false or misleading for two reasons.  One, they didn't disclose that Hopkins and Mr. Nicholson, that their misconduct could create a material risk of them being terminated and the company losing that key talent.

And then two, that the misconduct could create a material risk that the company's reputation would be harmed.

So those are really the two risk disclosures that we're talking about.  Neither of those things had materialized in August of 2022 when FE1 allegedly reported the misconduct to Mr. Nicholson.

THE COURT:  Okay.  So your response is that they had not yet materialized, okay.

And does it matter that the company knew that it was at least foreseeable?  Does that matter under the law?

MS. WRIGHT:  So, I think the plaintiffs rely on the *Target* case and would point to the *Target* case as an example of where a specific risk was foreseeable.  That's not this case, though.

THE COURT:  Why?

MS. WRIGHT:  Because here, the risk disclosures were about someone -- key talent leaving the company and then potential reputational harm.  And there was nothing -- in *Target*, it was a known risk, right?

So in the *Target* case, there had previously been customer boycotts because of *Target*'s policy of opposing this North Carolina bathroom bill.  And so as *Target* was looking towards in 2023 doing its marketing, its Pride Month marketing, they knew this known risk of customer boycotts because of its political activities and political stance.  And there's no similar allegations here of a known risk that had been revealed to the company.

THE COURT:  And what were the -- remind me again, the *Target* case, what were the known risks that they failed to --

MS. WRIGHT:  The known risk was that they were investing in DE & I initiatives and that they knew that there could be customer backlash as a result of their focus and investment in DE & I.

THE COURT:  Because of what had happened?

MS. WRIGHT:  Correct, because of what had happened with respect to the North Carolina bathroom bill.

THE COURT:  Okay.  And so your position here is that the risk that's disclosed is what would be the fallout versus, in the *Target* case, what was in fact the fallout?

MS. WRIGHT:  Correct.  It had actually already happened to them.  That risk had materialized previously.

THE COURT:  So the difference is "would be" versus "what was," right?

MS. WRIGHT:  Correct.

THE COURT:  That's your -- I want to make sure I'm understanding your position.

And it would be because it hadn't yet materialized.

MS. WRIGHT:  That's correct.

THE COURT:  Okay.

MS. WRIGHT:  And, Your Honor, that's the reason why amending the complaint further wouldn't save this theory of the case.

11

THE COURT:  Uh-huh.  Okay.  Go ahead.

MS. WRIGHT:  I want to be responsive to any questions you have.  Is it helpful, Your Honor, for me to go to the Charters next?

THE COURT:  Okay.

MS. WRIGHT:  So plaintiffs have alleged -- or have not alleged that the statements in the Committee Charters were inaccurate.  And really the statements in the Charters are nothing more than what the --

THE COURT:  Can I just back up to this risk disclosure?

MS. WRIGHT:  Yes, uh-huh.

THE COURT:  Just help me understand, what is the risk that's actually being warned there?

MS. WRIGHT:  The risk that's being warned is, one, that key talent would leave the company.  And then, two, that there could be reputational harm to the company as a result of misconduct coming to light.

THE COURT:  Okay.  Well, what about the implementation of business strategy?

MS. WRIGHT:  So I think in -- they do reference that in paragraph 98 of the amended complaint.

THE COURT:  Yeah.

MS. WRIGHT:  Where the future success of the company depends on retaining the key employees, losing them could

12

impede our work, harm the business strategies, that sort of thing. But, again, it's tied to the missing talent, to talent leaving the company.

THE COURT: Which hadn't materialized yet.

MS. WRIGHT: Correct.

THE COURT: That's what you're saying?

MS. WRIGHT: Correct.

THE COURT: Uh-huh. Okay.

MS. WRIGHT: So with respect to the Charters, they really don't do more than just recite the directors' responsibilities at a high level. So the directors have to communicate with the board. They have to evaluate management. They have to make recommendations.

There's nothing in the language of any of the Charters that guarantee that the directors would adequately perform every single responsibility at every single turn.

We cited a number of cases in our briefing, and I just commend to the Court the *Kooker* case, K-O-O-K-E-R. It's 497 F. Supp. 3d 1. And in that case the court dismissed statements, again, that in the court's words do nothing more than recite the directors' responsibilities and don't state or suggest that the directors adequately performs them.

And none of the cases that plaintiffs point to are on point. So, for example, in the *Falstaff Brewing* case, the issue was that the company pretended essentially that there was

a committee that existed when really that committee didn't exist.

In the *Jones* case, you know, the company claimed to oversee political activities when it was really concealing bribery.

And, again, in the *Target* case, the company claims there was a committee specifically overseeing ESG and DE & I initiatives.

THE COURT:  And all of those cases have facts that clearly are distinguishable from the facts of this case; I agree with you.

Talk to me about Nicholson's failure to report the conduct directly to the board.  Is there a half-truth there? Is there anything misleading about that?

MS. WRIGHT:  We don't think there's a half-truth or anything misleading about it, Your Honor.

THE COURT:  Why?

MS. WRIGHT:  Mr. Nicholson, in August of 2022, allegedly received this report from FE1.  The allegation is that he did nothing about it.  But there's no specific allegation about what he did besides the fact that he engaged outside counsel to conduct an investigation.  So the amended complaint alleges that fact.  He did take action.  There was an investigation.  And then the next thing that's pled in the amended complaint is that in February 2024, as the result of

*14*

another investigation, the company makes the decision to terminate Hopkins.

THE COURT:  So your argument -- your position is there's nothing in the complaint, because I really am trying to work from the complaint, as to the statements.

MS. WRIGHT:  Correct, Your Honor.  So there's nothing in the complaints that would go to the fact that Mr. Nicholson didn't meet his responsibilities in these very high-level Charters that outline his responsibilities.

And in fact, we know that at the end of the day, the company, there was an investigation and there were these terminations -- or a termination.

THE COURT:  Okay.

Okay.  Anything else?

MS. WRIGHT:  So I would just end by saying --

THE COURT:  The SOX certifications I think is -- I mean, I think that's an easy one.  They're nondisclosure documents per se.  But I don't know that the plaintiff agrees with me, but we'll see.  You agree with that?

MS. WRIGHT:  I agree with that, Your Honor, yes.

THE COURT:  Okay.

MS. WRIGHT:  Thank you.

THE COURT:  Okay.  All right.  Ms. Fuks.

In your comments, when you make your comments, could you refer to the statements as you've alleged them in the

*15*

complaint; that would be helpful.

MS. FUKS:  Sure, Your Honor.

THE COURT:  Yeah.

MS. FUKS:  Good morning, Your Honor.  Thank you for your time.

So I'm going to address some of the issues that defense counsel brought up.  First, about Nicholson, the complaint alleges that FE1 told Nicholson in August of 2022 that he was harassing her and of all of the other misconduct that is alleged with particularity.

Now, the internal investigation did not conclude and he was not fired until 18 months later.  And what the facts allege in the complaint and if -- what the press release essentially says, what the 2024 6-K says is that he -- he -- now, he was fired, Nicholson, remember -- he went behind the board's back and he took -- he engaged other outside counsel.  That's what the press release says.

Now, implicit in these Board Charters is -- we are not alleging that the Board Charters say that every member of the committee is required to do everything perfectly.  But implicit in these Charters is that the process exists.  And what he actually did, what was alleged that he did is just completely contrary to the process.  It's not sufficient to say, well, he did his job because he assessed Hopkins' conduct.  He saw that he was sexually harassing employees.  He had these

allegations and yet he decided to engage his own counsel.  That is just completely contrary to what's in those Charters.

THE COURT:  Show me.

MS. FUKS:  So where the --

THE COURT:  Show me where that's false or misleading.

MS. FUKS:  Okay.

THE COURT:  Because, I mean, as I read it, I don't see any allegation that Nicholson, that the various committees that he belonged to, that they didn't exist, or that the Committee Charters represented inaccurately the members' responsibilities.  I'm trying to figure out what the false statement is.  Show me what you're --

MS. FUKS:  Well, the false statement -- so as in the *Target* case, the false statement is that he -- the Charter stated that there was a process in place where under the remuneration committee and the corporate governance committee, the committees would assess whether the CEO acted with integrity sufficient for a public company, whether the CEO acted in accordance with ethical standards.

And the Board Charter says that, you know, the entire board is required to make a decision to have -- to engage legal counsel.

THE COURT:  So what's the --

MS. FUKS:  So what he did was that he went behind the board's back and --

17

THE COURT:  Well, show me how that statement -- show me the false statement that you're relying upon.

MS. FUKS:  Just a moment, Your Honor.

So it begins on paragraph 118 of the complaint, which discusses the --

THE COURT:  118?

MS. FUKS:  Yes.

THE COURT:  Uh-huh.  Okay.

MS. FUKS:  Okay.  So in paragraph 119, as the Chair of the Nominating and Corporate Governance Committee, the purpose of the committee is to make other recommendations to the board relating to the directors of the company, communicate with the board.  If the committee concludes it must retain legal, accounting, or other advice, it must do so.

Paragraph 120, the Corporate Governance Committee. The committee must identify and evaluate candidates, including incumbent directors for re-election to serve on the board, using criteria including potential conflicts of interest, director independence and other requirements, periodically review the performance of the board, consider whether the directors, both individually and --

THE COURT:  I have it here.  I can read it.

MS. FUKS:  Okay.

THE COURT:  But why is that false?

MS. FUKS:  Well, because in conducting this, in doing

*18*

this, I mean, Mr. Nicholson did not do this.  He could not have reviewed whether Hopkins provides the integrity, experience --

THE COURT:  Well, my question is not what they did or didn't do.  Why is this false, this statement false?

MS. FUKS:  The statement is false because it's an inaccurate representation of what the committee actually did.

THE COURT:  Well, they didn't -- they're not talking about the past.  They're talking about what the committee must do, not what did the committee do here.  And I think that's the big distinction.

I think that the plaintiff wants to just throw all of this in one big pot and not dissect it in terms of how is this false.  So it's one thing to say, well, this is what the committee did do when in fact it didn't do it.  Okay.  That would be a problem.  But this tells you what the committee must do in general.  It must identify and evaluate.

I mean, I don't see anything in here which says that Nicholson can't do what he did.  Where is there a statement that says he cannot seek outside counsel?

MS. FUKS:  It says that he must seek outside -- it says that if counsel -- if counsel is required, he's required to consult with the board, in paragraph 119.

THE COURT:  Uh-huh.

MS. FUKS:  So he's required to consult with the board, not to obtain outside counsel behind the board's back.

And in fact --

THE COURT:  The committees can seek outside counsel; you understand that?

MS. FUKS:  Yes.  But he did not do this as a committee.  The company admits this.  And those are the reasons why he was terminated or why he chose to resign after discussing things with the board.

I mean, I think it's -- you know, I think the inference -- the Court's required to draw inferences and reasonable inferences in plaintiff's favor.  And I think it's a reasonable inference here from the fact that Hopkins was terminated and then Nicholson resigned the same day, and the 6-K says -- the 6-K explicitly says during the course of the -- and this is Exhibit E to defendant's declaration.

THE COURT:  Wait.  Where are you?

MS. FUKS:  So this is the February 14, 2024 6-K.  And that's Exhibit E to defendant's declaration.

THE COURT:  I have it.

I just want to focus on the complaint because I think that's what's key here.

MS. FUKS:  Okay.  Well, I believe that's alleged in the complaint as well.

THE COURT:  So what are you --

MS. FUKS:  I'll find you the paragraph.

THE COURT:  What paragraph?

MS. FUKS:  One moment, Your Honor.

(Court conferring with law clerk.)

MS. FUKS:  So paragraph 128 and 129 of the complaint.

THE COURT:  All right.  Let me look.

MS. FUKS:  So specifically paragraph 129.

THE COURT:  Okay.  Let me look.  Just let me read it for a second.

(Pause.)

MS. FUKS:  So it says that during the course of the investigation into Hopkins, the board discovered that Nicholson had prior knowledge of the existence of the earlier of Dr. Hopkins' relationships and had addressed the situation directly and with the involvement of other outside counsel rather than in consultation with the board.

THE COURT:  Okay.  So show me the false statement.

MS. FUKS:  And then so the false statement in the Charters would be the fact that he is -- the false statements in the Charters are essentially, okay, in the 20-Fs, the Charters, in 2022, 2023 20-Fs, the Charters are representing a process that takes place, it will take --

THE COURT:  And what's -- I think, Ms. Fuks, I just think we're talking about a little bit of apples and oranges here.

MS. FUKS:  Okay.

THE COURT:  I don't see the false statement.  I see

the Charters more like a code of conduct.  These are sort of what they aspire to do.  They're going to form committees.  This is the process by which they're going to follow.

The fact that Nicholson did not follow it does not make that statement in the Charter false.  The fact that Nicholson violated that statement does not make that statement false.  Do you agree with that?

MS. FUKS:  I don't agree with that.  I mean, if you -- and if you look at the *Target* case, I see the *Target* case as being directly on point, because in the *Target* case you do have the fact that there was a prior incident that involved DEI that the company was aware of.  But here you have the entire context of the case, which is this is a small company.  You have the context of the #MeToo Movement.  You have the context of high-profile CEO firings, and things that did not used to be material to investors are now material to investors.  The same way that a bribery crisis or illegal bribery can undo a company, something like this can undo a company.  You see the company's stock --

THE COURT:  But you have to -- but we can't lose sight of why we're here.  We're here because you allege in your complaint that these statements that were made were false at the time.  And I'm having a hard time understanding.  I understand what you're saying, well, Nicholson did this, Nicholson did that, but at the time these statements were made,

unlike in the *Target* case where they knew the results of what had happened because of the North Carolina matter, and they still went ahead and made those statements, here there's no allegation that I see in the complaint that they knew at the time that they made these statements that they were -- that there's nothing false about them; that this is the process that we follow.  Companies are required to follow this process.  Again, I see it as a code of conduct.  And this is the process we follow.

The fact that Nicholson didn't follow it, and I don't see in here where there's any allegation that the company knew that.  Matter of fact, the allegation is quite the opposite; that he did it behind the board's back.

MS. FUKS:  I mean, Your Honor, when we talk about the company, but corporations only act through their executives.  And here we have the two top people at the company engaging in misconduct.  And this is not a huge company like Cigna that has --

THE COURT:  So where's the allegation that they knew that at the time that they made these statements that they were false?

MS. FUKS:  Well, Hopkins --

THE COURT:  You don't have that in there anywhere.  Because if I took your argument to the extreme, then it seems to me your argument would be that in any small company, they

clearly knew when they made these statements that they were false. Because they're so small, they must have known that the CEO was having an affair or Nicholson had gone *ultra vires* and gone on to outside counsel, which, by the way, the committee says it can do. It just seems to me that the plaintiff is hanging its hat on the fact that this was such a small company, they had to have known.

MS. FUKS: Well, no, not at all, Your Honor. The CEO was engaged in the misconduct.

THE COURT: Right.

MS. FUKS: And the CEO signed the 20-Fs. He's responsible for those statements. The CEO designed the Board Charters. The CEO designed the code-of-conduct statements. The CEO designed the gender-pay gap statements. And in fact, the gender-pay gap statements are coming directly from him.

And I think defendants make short shrift of the gender-pay gap statements, because, I mean, something is material to investors when the company affirmatively invokes it. And there was no duty to -- yes, the UK says you have to report the gender pay gap. You have to report the statistics. But Exscientia went out of its way to have a narrative in the gender-pay gap report talking about all of the initiatives that it does for women, encourage women's careers in STEM. And here you have a CEO, who I don't think defendants, I don't think they dispute that he's a hands-on CEO, he's the brainchild of

*24*

this company, and that does distinguish this company a bit from other companies.  I mean, he is the backbone of the company.  That is him.  And so --

THE COURT:  Right.  And just because he's, you know, engaged in this type of misconduct doesn't mean all of these statements that the company is making make them false.  Otherwise, I think the case law would be quite different.

MS. FUKS:  But the statement --

THE COURT:  That once a company has a -- you know, a CEO that engages in misconduct, then all of a sudden all of the statements that were made in their 10-Ks or 20-Fs are false, that doesn't -- that's just not what the case law says.

MS. FUKS:  Well, the case law does say that when defendants make specific statements about specific things like the hiring policy or something like gender pay gap that's talking about gender equality and how women are treated in the workplace and when you have conduct -- and even the *CBS* case that goes against us says when you have conduct that is so anathema to these statements, that can make statements that are typically considered puffery, like code-of-conduct statements, that can make those statements misleading.  And his conduct is and the coverup as well is anathema to what is in the statements on the gender pay gap.  It is anathema to the statements in the 20-F about, you know, a work environment that promotes --

THE COURT:  Right.  If the Court becomes an HR specialist, sure.  I mean, it becomes anathema to the statements that are being made at the time.

But there's no allegation that I can see it in the amended complaint that at the time that these statements were made they were false because the company knew about it and chose to not disclose it.  And I think that's what makes the statement false.

Otherwise, these statements that are made in the code of conduct, these statements that are made in the -- in the Charter, these are all -- call them aspirational, call them puffery.

But it just seems to me that you are trying to turn a code of conduct into -- if the statement were "none of our officers have engaged in misconduct," okay.  But we aspire to have a code of conduct where our officers do not engage in misconduct, that's not false, right?

MS. FUKS:  Well, putting the code of conduct aside, I think the other statements are more specific.  The statements in the Board Charters are more specific on the process that's in place.

THE COURT:  Show me.  Let's talk about the Charter.

MS. FUKS:  Okay.

THE COURT:  Show me the statements.

MS. FUKS:  Okay.  You know, if you look at the

statement -- if you look at paragraph 126 of the complaint.

THE COURT:  Okay.

MS. FUKS:  It talks about --

THE COURT:  And then I want to go to the statement -- I want to go to the -- this is the Charter.

MS. FUKS:  And so this is the Remuneration Committee Charter.

So it says it will evaluate the chief executive officer's performance, and the evaluation will take into account whether the CEO fosters a corporate culture that promotes the highest level of integrity and the highest ethical standards.

THE COURT:  Okay.  How is that false?

Is there any allegation that they never conducted that evaluation?  They did.

MS. FUKS:  Well, yes, there is the allegation that Defendant Nicholson conducted the -- I mean, he did not conduct that -- or if he conducted that evaluation, then he came to the wrong result, because he was aware of the allegations against Hopkins, and he didn't properly evaluate the CEO with respect to his integrity.  He knew that his integrity was --

THE COURT:  Do you agree that there's a difference between evaluate and properly evaluate?  Do you agree?

MS. FUKS:  I agree there's a difference between evaluate and properly evaluate.

THE COURT:  Okay.

MS. FUKS:  But, I mean, to say that -- I mean, if an investor were reading this, I think if you were to ask an investor, okay, well, we have a Charter in place that says that the head of the remuneration committee is going to evaluate whether the CEO has integrity, right, and then the investor finds out, well, yeah, the head of the committee, he evaluated him and he knew that he was engaging in sexual harassment and menacing employees, but he still came to the conclusion that nothing should be done about it, I mean, I don't think that that really -- I think --

THE COURT:  But what is false about that?  The Charter says these are just guides.  I guess I'm really just struggling with that the plaintiff is not happy with how it transpired.  They're not happy with quote-unquote the investigation that was done.  But I'm focusing on the falsity of the statements.

So that the committee will review -- I'm looking at paragraph 126 -- and evaluate the executive's performance. Unless none of that happened and in the past never happened, I don't see how that's false, particularly when the explicit terms of the Charter say these are just guides to follow anyway.

MS. FUKS:  Well, the Charter says that these are guides, but it also uses mandatory language.  "This must be

done."  This is what -- this is what the committee does.

I mean, it's corporate governance.  I mean, if we had governance in this country that said, well, we evaluate the integrity of the president and then the person doing that found out that the president was engaged in misconduct and said nothing and hid it, then people would have cause to complain. People would --

THE COURT:  Right.  But that didn't happen here.

MS. FUKS:  But our allegations are that that did happen here, because Hopkins is the head of -- he's on the -- I mean, Nicholson rather is on these committees and he hid it. He didn't do that.  And he's a wrongdoer.

THE COURT:  He did an evaluation.  He used outside counsel.  There's nothing that prevented him under the guides from using outside counsel.  So how is it false and misleading? You may not like how he went about it.  But you have to -- you have to persuade me that the statements that were made are misleading versus not to the plaintiff's liking.

MS. FUKS:  Well, the board -- the board admits that he did not use the proper procedure, because, again, if you go back to the 6-K, the 2024 6-K, it says rather than in consultation with the board, he engaged other outside counsel.

THE COURT:  But it doesn't -- okay.  Fine.  And that's what the board determined that he should have -- they felt that he should have come to the board.  They didn't like

what he had done.  He should have come to the board and not gone to outside counsel.

But I keep going back to, but where is the false statement where they say that under no circumstances will we use outside counsel, for example?  Or under no circumstances -- you have to -- I keep coming back to the false statement.  Because it just seems to me that the plaintiff is not happy with how the investigation went, nor was the board itself happy with how Nicholson went about the investigation.  But therein it does not make a false statement.  That's the issue that I keep trying to come back to.  And I think that's what the case law requires; that this Court has to focus on the materiality and the falsity of the statement, not the displeasure with what was done, not the fact that the statement was -- well, because you don't have any allegations that the statement was false at the time it was made because of prior matters, which many of the cases focus on.

The cases that are cited is where the defendant company says something which clearly is contrary to what happened.  And I don't see -- to look at paragraph 126, I don't see anything false with that "the committee will evaluate the CEO's performance," which is what they did when they ended up canning him.

MS. FUKS:  I mean, and then in paragraph 119, the Corporate Governance Committee, he's a Chair of the Corporate

*30*

Governance Committee.

THE COURT:  Yeah.

MS. FUKS:  And he has to identify, evaluate, and recommend, communicate with candidates, and make other recommendations to the board relating to the directors of the company and communicate with the board.

THE COURT:  Is this -- am I referring to -- is this the Charter?

MS. FUKS:  Yes.  It's paragraph 119.  This is the Charter of the Corporate Governance Committee.

THE COURT:  Right.  And, again, you yourself concede that this -- the Charter is just a guide.  Again, the plaintiff may not like how this all unfolded, but I'm trying to stay focused on what serves as the basis of this complaint, and that is that the 20-F was false and misleading, not that, you know, to sort of parrot what the defendants say is that, you know, this is not meant to be a human resources issue.

MS. FUKS:  I mean, I think also the risk disclosures are misleading.  I mean, it doesn't sound like I'm going to convince you on these Board Charters for the moment.

THE COURT:  All right.  Let's turn to the risk disclosures.

MS. FUKS:  So if you look at paragraph 100 where it says, "Our employees, independent contractors, and vendors may engage in misconduct or other improper activities," I mean,

*31*

that statement is misleading because at the time that statement was made, Hopkins was engaging in misconduct.  And that is what the *Tenaris* case in the Southern District says where the CEO was engaged in bribery and the company's 20-Fs said that the employees may engage in bribery that the court --

THE COURT:  Well, at the time that they knew that, they were.  That's the distinction in that case.

MS. FUKS:  But at the time -- so Hopkins signed this 20-F.  And so he was the employee engaging -- he was the CEO engaging in the misconduct.  So he knew it was false when made.

THE COURT:  Where does it say that no one has engaged in misconduct in this company?

MS. FUKS:  But courts don't require it to say that nobody has engaged in misconduct.  This is a risk disclosure that states something that has actually already occurred as being hypothetical.

THE COURT:  Uh-huh.  Well, okay.  I think that what it's warning about is that if an independent contractor, employee, or consultant engages in misconduct, that it may -- that it would cause significant liability, and that -- you know, I think the *Williams* case, the Third Circuit found that the risk disclosure wasn't false or misleading because this is simply, as was the case in *Williams*, a warning that if this happens, this is what the fallout will be.

MS. FUKS:  But the Third Circuit has never held that

the risk has to fully come to fruition for the statement to be misleading.

THE COURT:  No; I didn't say that.  But this is just telling you what the fallout will be.  That's what the *Williams* Court said, as I read it.

MS. FUKS:  But you have other cases that say I think the -- I don't recall the facts of *Williams* offhand, but I do recall -- I do recall it being distinguishable.  But I think you have other cases that say that a hypothetical risk warning such as employees may engage in misconduct when the CEO is engaging in misconduct is misleading, even if the fallout from that misconduct had not come to fruition.  And here there are other circumstances.

The context shows that Hopkins knows that and Nicholson knows that a fallout is going to come because it's already been reported, and Hopkins knows he's engaging in the misconduct.  Nicholson knows that --

THE COURT:  So you seem to be saying two things; that the termination was inevitable, okay?  I don't see anywhere in the code where it says a termination was mandatory.

And you seem to be saying that the company had an obligation to disclose the investigation before its findings were even made.  You seem to be saying both of those two things.  That would sort of be a sea change to me under the law.

In other words, you're saying that Hopkins, because you knew he was engaging in this misconduct, he had a duty to disclose it even before the investigation was done, and because Hopkins knew when he signed it that he was going to be fired, he had a duty to disclose that as well. That's what you seem to be saying to me.

MS. FUKS: Well, what the case law says is that the statements are misleading absent that disclosure. So there's two possibilities.

I mean, one, the company has -- you know, there's no duty to disclose uncharged illegal conduct.

THE COURT: Right.

MS. FUKS: But once you make an affirmative statement like this that describes misconduct as hypothetical when it is occurring, well, that's actionable.

And the other alternative is if they want to make this statement and they make this statement, then they have to give sufficient information so that -- to hedge it, saying, well, there's an investigation going on or something of that nature. This is --

THE COURT: So that's the plaintiff's position, that they would have to disclose that an investigation is going on even before they've concluded their investigation? That's your position?

MS. FUKS: Well, our position is that the statement

*34*

is false in and of itself.

THE COURT:  You're referring to --

MS. FUKS:  The risk disclosure statement.

THE COURT:  -- "our employees" --

MS. FUKS:  "Our employees may engage in misconduct that could cause significant liability" --

THE COURT:  Yeah.

MS. FUKS:  -- "or harm for our reputation."

THE COURT:  Tell me what -- that's just simply not a false statement.  That's just a general statement that says that could happen.  But you want to go one step further.  I just want to make sure I understand what you're saying is, well, because there was an investigation going on, they had a duty to disclose that.

MS. FUKS:  Well, what I'm saying is that the first part of that statement is affirmatively false.  To say "our employees may engage in misconduct" when the CEO is engaging in misconduct, when he knows he's engaging in misconduct --

THE COURT:  Right.

MS. FUKS:  -- that's a false statement.

THE COURT:  False statement how?  By omission?  Because "our employees may engage in misconduct" is a true statement.  "Our employees may."  The CEO may engage in misconduct, that's a true statement.  How is it false?  That he did not admit that he was engaging in misconduct?

MS. FUKS: Well, it's a hypothetical. It presents something as hypothetical that has already taken place. And courts have held that that's false to present as hypothetical. I mean, there's the *Prudential* case that says, you know, to warn your -- if you're hiking, to warn your hiking companion that, you know, he could fall into a ditch, it's possible, and the Grand Canyon is 2 feet away, that's deceitful, because the warning has to be -- it has to be meaningful. This is not a meaningful risk warning.

THE COURT: I think you're evading my question, though. My question is, is that it's plaintiff's position that this is a false statement because the CEO did not admit that he was engaged in misconduct. That's your position is my question?

MS. FUKS: Is false, either affirmatively false or by omission, yes.

THE COURT: Right. Okay.

MS. FUKS: Yes.

THE COURT: All right. Okay.

Okay. Anything else? The SOX certification, can I persuade you that that's not a disclosure or you want to argue that?

MS. FUKS: Well, I mean, I think the SOX certification -- if the Court finds that the statements in the 20-F were misleading, then the Court holds that the SOX

certification is also misleading.

THE COURT:  Okay.  So I think we agree on that.

MS. FUKS:  Yeah.

THE COURT:  All right.  Anything else?

MS. FUKS:  Nothing further, Your Honor.

THE COURT:  Okay.  Thank you.

Do you want to respond to anything that we've argued or talked about?

MS. WRIGHT:  If you have questions, happy to answer them, but nothing further from us, Your Honor.

THE COURT:  What do you make -- just the question I have is that the plaintiff does seem to make a big deal about the fact that it was the CEO who signed these and the CEO clearly knew he was engaged in misconduct, what's your response to that?

MS. WRIGHT:  Well, a couple of things.

One, the timing doesn't match up.  So the first 20-F was in March 2022.  We do not know when the alleged misconduct occurred.  That's not in the complaint.  And then the second 20-F was filed in March 2023, which is after FE1 had left the company.  So, again, there's nothing in the amended complaint with more specifics as to the timing of the alleged misconduct.

But the risk disclosures are about the company, the company-wide employees and independent contractors and not specific to what may have been an isolated incident.  Again, we

don't know because there are not facts -- sufficient facts alleged in the complaint, but what may have been an isolated incident with one employee.  And so it doesn't render false the statement about the company-wide efforts.

THE COURT:  Okay.  All right.  Thank you.

Let me ask a question about -- did they say that when you interviewed Employee 2, Employee 2 gave information that was not helpful to your case?  Well, I think they speculate about that.  Can you respond to that?

MS. FUKS:  So --

THE COURT:  Because that did sort of raise a little bit of a red flag to me, because, you know, I could -- I could flesh that out if I thought that that was something I should. But what do you say about that?

MS. FUKS:  So what the complaint alleges is that FE1 referenced this other person, okay.

THE COURT:  Right.

MS. FUKS:  Not that plaintiffs necessarily spoke to an FE2.  So you have FE1 who is the confidential witness, and she says that there was another person, FE2, who had a relationship with Mr. Hopkins, and then there was yet another person who was a victim of his sexual harassment.  But FE2 had a consensual relationship with him where she very much, you know, FE1 stated that she is so devoted to Mr. Hopkins, she would lie under oath for him.  So this is based on FE1's

statements.

I also would like to say about the timeline that I think the complaint is very specific that FE1 started working at Exscientia in December of 2021, and, I mean, I think under 9(b), you don't have to go into the details of -- all the gory details of the misconduct. But throughout the course of her employment, she was essentially terrorized by Mr. Hopkins. She was traumatized. She left the company. She was worried that he was going to do it to other people. She reported it in August 2022, and nothing was done about it throughout the class period until the end of the class period.

So I think the statements remain actionable. The statements remain false, you know, while this is going on. The risk of the threat that this is going to be exposed, it continues regardless of whether the harassment occurred, you know, for the whole duration of the class period or whether she left and then nothing was done about it. These false statements are continuing. They're uncorrected.

THE COURT: But wouldn't it -- I mean, wouldn't it be relevant to your complaint to have -- to satisfy 9(b), if you're trying to impute knowledge to the company and you're trying to argue that these statements when made were false, why wouldn't those facts be in there?

MS. FUKS: Well, I think the timeline that we alleged was -- I mean, we certainly could clarify that detail and state

that, well, these statements continued to be false while nothing was -- because nothing was done about the misconduct through the duration. I mean, I'm not sure exactly --

THE COURT: I just think there's a big disconnect. I mean, it's obvious from my questioning that there's a big disconnect in your complaint between what you allege and what the statements are.

I think that -- I mean, I agree with the defendants that you seem to be turning this whole issue into an HR issue. And you haven't set forth sufficient facts that go to the falsity of the statements.

Anyway, but I'll review what we've discussed today and I'll take it under advisement.

MS. FUKS: Thank you, Your Honor.

THE COURT: Okay. All right. Nice to see you, all. Thank you.

MS. SULLIVAN: Thank you.

MS. WRIGHT: Thank you.

MR. FRENCH: Thank you, Your Honor.

THE COURTROOM DEPUTY: All rise.

(Proceedings concluded at 12:05 p.m.)

- - - - - - - - - - - - - - - - - - - - - - -
**FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**
- - - - - - - - - - - - - - - - - - - - - - -

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*United States District Court*
*District of New Jersey*

*40*

/S/John J. Kurz, RDR-RMR-CRR-CRC                September 19, 2025

Court Reporter/Transcriber

MR. FRENCH: [3]  4/12
4/15 39/19
MS. FUKS: [75]
MS. SULLIVAN: [3]  4/1 4/7
39/17
MS. WRIGHT: [39]  3/8
4/11 4/17 4/21 4/23 6/14
6/24 7/25 8/3 8/7 8/9 8/11
8/18 9/9 9/14 10/3 10/8
10/13 10/17 10/21 10/23
11/2 11/6 11/12 11/15 11/21
11/24 12/5 12/7 12/9 13/15
13/18 14/6 14/15 14/20
14/22 36/9 36/16 39/18
THE COURT: [115]
THE COURTROOM
DEPUTY: [2]  3/4 39/20

**-**

-- that's [1]  34/20

**/**

/S/John [1]  40/3

**0**

02116 [1]  2/3
07102 [1]  1/17
08101 [1]  1/8

**1**

10-Ks [1]  24/11
100 [1]  30/23
10001-2157 [1]  2/6
10016 [1]  1/14
105 [2]  8/13 8/18
118 [2]  17/4 17/6
119 [4]  17/9 18/22 29/24
30/9
11:11 [1]  1/9
11:11 a.m [1]  3/3
120 [1]  17/15
126 [3]  26/1 27/19 29/20
128 [1]  20/3
129 [2]  20/3 20/5
12:05 p.m [1]  39/21
14 [1]  19/16
14th [1]  2/3
1520 [1]  1/17
16 [1]  1/8
18 [1]  15/12
19 [1]  40/3
1:24-cv-05692-RMB-AMD
[1]  1/4

**2**

2 feet [1]  35/7
20-F [11]  5/6 5/12 5/25 6/3
6/8 24/24 30/15 31/9 35/25
36/17 36/20
20-Fs [6]  5/18 20/18 20/19
23/11 24/11 31/4
2021 [2]  5/7 38/4
2022 [12]  5/4 5/6 5/16 5/24
6/2 8/12 9/3 13/18 15/8
20/19 36/18 38/10
2023 [5]  5/12 5/15 9/21
20/19 36/20
2024 [7]  5/4 6/17 8/3 13/25
15/14 19/16 28/21
2025 [2]  1/8 40/3
2157 [1]  2/6
23 [2]  5/6 5/12
24-5692 [1]  3/10
275 [1]  1/14

**3**

3d [1]  12/19

**4**

40th [1]  1/14
497 [1]  12/19
4th [1]  1/7

**5**

500 [1]  2/3
55 [1]  2/6
5692 [1]  3/10
576-7094 [1]  1/22

**6**

6-K [6]  15/14 19/13 19/13
19/16 28/21 28/21

**7**

7094 [1]  1/22

**8**

856 [1]  1/22

**9**

98 [1]  11/22

**A**

a.m [2]  1/9 3/3
above [1]  39/25
above-entitled [1]  39/25
absent [1]  33/8
accordance [1]  16/19
account [1]  26/10
accounting [1]  17/14
act [1]  22/15
acted [2]  16/17 16/19
action [2]  1/3 13/23
actionable [2]  33/15 38/12
activities [3]  9/23 13/4
30/25
actually [6]  7/20 10/13
11/14 15/22 18/6 31/15
address [2]  4/24 15/6
addressed [1]  20/12
adequately [2]  12/15 12/22
adjourn [1]  3/24
admit [2]  34/25 35/12
admits [2]  19/5 28/19
admitted [2]  3/14 3/15
advice [1]  17/14
advisement [1]  39/13
affair [1]  23/3
affirmative [1]  33/13
affirmatively [3]  23/18
34/16 35/15
after [5]  4/24 5/25 6/8 19/6
36/20
again [10]  10/1 12/2 12/20
13/6 22/8 28/20 30/11 30/12
36/21 36/25
against [2]  24/18 26/19
agree [10]  13/11 14/19
14/20 21/7 21/8 26/22 26/23
26/24 36/2 39/8
agrees [1]  14/18
ahead [2]  11/1 22/3
aided [1]  1/23
all [30]  3/4 3/5 3/5 3/9 4/6
4/14 4/19 7/3 7/18 8/15 13/9
14/23 15/9 18/11 20/4 23/8
23/22 24/5 24/10 24/10
25/11 30/13 30/21 35/19
36/4 37/5 38/5 39/15 39/15
39/20
allegation [10]  13/19 13/21
16/8 22/4 22/11 22/12 22/19

25/25 26/14 26/16
allegations [6]  6/11 9/24
16/1 26/19 28/9 29/15
allege [5]  6/15 8/12 15/13
21/21 39/6
alleged [15]  5/3 5/14 5/17
5/21 5/23 11/6 11/7 14/25
15/10 15/22 19/21 36/18
36/22 37/2 38/24
allegedly [2]  9/3 13/19
alleges [5]  5/22 8/19 13/23
15/8 37/15
alleging [1]  15/19
allowing [1]  3/23
already [4]  10/13 31/15
32/16 35/2
also [6]  2/9 4/12 27/25
30/18 36/1 38/2
alternative [1]  33/16
am [2]  14/4 30/7
AMD [1]  1/4
amended [11]  5/22 6/4
6/10 8/11 8/14 8/18 11/22
13/22 13/25 25/5 36/21
amending [1]  10/24
anathema [4]  24/19 24/22
24/23 25/2
ANN [1]  1/16
annual [1]  5/2
another [4]  5/12 14/1 37/20
37/21
answer [1]  36/9
any [9]  3/23 7/4 11/2 12/14
16/8 22/11 22/25 26/14
29/15
anything [8]  13/14 13/16
14/14 18/17 29/21 35/20
36/4 36/7
anyway [2]  27/23 39/12
anywhere [2]  22/23 32/19
apologize [1]  4/4
appear [2]  3/25 4/5
appearance [1]  3/16
appearances [1]  3/11
apples [1]  20/22
applied [1]  7/4
April [1]  5/15
are [41]
argue [3]  3/24 35/21 38/22
argued [1]  36/7
arguing [1]  4/16
argument [3]  14/3 22/24
22/25
Arthur [1]  2/10
aside [1]  25/18
ask [3]  7/22 27/3 37/6
aspirational [1]  25/11
aspire [2]  21/2 25/15
assess [1]  16/17
assessed [1]  15/24
August [7]  4/25 5/24 8/12
9/3 13/18 15/8 38/10
August 2022 [1]  38/10
Avenue [1]  1/14
avers [1]  8/16
aware [3]  4/3 21/12 26/19
away [1]  35/7

**B**

back [10]  4/24 11/10 15/16
16/25 18/25 22/13 28/21
29/3 29/6 29/11
backbone [1]  24/2
backlash [1]  10/5
bad [1]  7/19
based [2]  6/4 37/25
basics [1]  7/1
basis [1]  30/14

bathroom [2]  9/20 10/9
because [41]
becomes [2]  25/1 25/2
been [7]  3/19 7/14 9/18
9/24 32/16 36/25 37/2
before [4]  3/1 32/22 33/3
33/23
begins [1]  17/4
behavior [2]  5/22 5/24
behind [4]  15/15 16/24
18/25 22/13
being [8]  6/3 8/22 11/14
11/15 21/10 25/3 31/16 32/8
believe [1]  19/21
belonged [1]  16/9
besides [1]  13/21
between [3]  26/23 26/24
39/6
big [5]  18/10 18/12 36/12
39/4 39/5
bill [2]  9/20 10/9
bit [4]  6/9 20/22 24/1 37/12
board [27]  12/12 13/13
15/18 15/19 16/20 16/21
17/12 17/13 17/17 17/20
18/22 18/25 19/7 20/10
20/14 23/12 25/20 28/19
28/19 28/22 28/24 28/25
29/1 29/8 30/5 30/6 30/20
board's [4]  15/16 16/25
18/25 22/13
boil [2]  6/11 6/13
Boston [1]  2/3
both [2]  17/21 32/23
boycotts [2]  9/19 9/22
Boylston [1]  2/3
brainchild [1]  23/25
Brewing [1]  12/24
BRIAN [2]  2/5 4/12
bribery [5]  13/5 21/17
21/17 31/4 31/5
briefing [2]  7/11 12/17
brought [1]  15/7
buckets [1]  5/10
Building [1]  1/7
BUMB [2]  1/10 3/2
burden [2]  6/20 6/25
business [2]  11/20 12/1

**C**

call [2]  25/11 25/11
Camden [1]  1/8
came [2]  26/18 27/9
can [13]  3/5 7/22 11/10
17/22 19/2 21/17 21/18 23/5
24/19 24/21 25/4 35/20 37/9
can't [2]  18/18 21/20
candidates [2]  17/16 30/4
canning [1]  29/23
cannot [1]  18/19
Canyon [1]  35/7
careers [1]  23/23
Carolina [3]  9/20 10/9 22/2
case [35]  3/10 4/24 7/11
7/13 9/10 9/10 9/11 9/18
10/2 10/12 10/25 12/18
12/19 12/24 13/3 13/6 13/10
16/14 21/9 21/10 21/10
21/13 22/1 24/7 24/12 24/13
24/17 29/11 31/3 31/7 31/21
31/23 33/7 35/4 37/8
cases [7]  12/17 12/23 13/9
29/17 29/18 32/6 32/9
categories [1]  5/13
cause [3]  28/6 31/20 34/6
CBS [1]  24/17
CEO [23]  16/17 16/18
21/15 23/3 23/8 23/11 23/12

23/13 23/14 23/24 23/25
24/10 26/10 26/20 27/6 31/3
31/9 32/10 34/17 34/23
35/12 36/13 36/13
CEO's [1]  29/22
certainly [1]  38/25
CERTIFICATE [1]  39/22
certification [4]  5/8 35/20
35/24 36/1
certifications [1]  14/16
certify [1]  39/24
Chair [2]  17/9 29/25
change [1]  32/24
Charter [14]  16/14 16/20
21/5 25/11 25/22 26/5 26/7
27/4 27/13 27/22 27/24 30/8
30/10 30/12
Charters [20]  5/7 11/4 11/7
11/8 12/9 12/15 14/9 15/18
15/19 15/21 16/2 16/10
20/17 20/18 20/19 20/19
21/1 23/13 25/20 30/20
chief [3]  1/10 3/2 26/8
chose [2]  19/6 25/7
Cigna [1]  22/17
Circuit [2]  31/21 31/25
circumstances [3]  29/4
29/5 32/13
cited [2]  12/17 29/18
CIVIL [1]  1/3
claimed [1]  13/3
claims [3]  4/25 5/10 13/6
clairvoyance [1]  7/9
clarification [1]  6/23
clarify [1]  38/25
class [6]  5/3 5/11 5/14
38/10 38/11 38/16
clear [1]  6/7
clearly [4]  13/10 23/1 29/19
36/14
clerk [2]  2/11 20/2
co [1]  4/8
co-counsel [1]  4/8
code [11]  4/25 5/1 21/1
22/8 23/13 24/20 25/9 25/14
25/16 25/18 32/20
Cohen [1]  1/7
come [8]  4/21 5/17 28/25
29/1 29/11 32/1 32/12 32/15
coming [3]  11/18 23/15
29/6
Commencing [1]  1/9
commend [1]  12/18
comments [2]  14/24 14/24
commitment [1]  5/9
committee [29]  11/7 13/1
13/1 13/7 15/20 16/10 16/16
16/16 17/10 17/11 17/13
17/15 17/16 18/6 18/8 18/9
18/14 18/15 19/5 23/4 26/6
27/5 27/7 27/18 28/1 29/21
29/25 30/1 30/10
committees [5]  16/8 16/17
19/2 21/2 28/11
communicate [4]  12/12
17/12 30/4 30/6
companies [2]  22/7 24/2
companion [1]  35/5
company [52]
company's [6]  6/17 7/5
7/19 8/25 21/19 31/4
company-wide [2]  36/24
37/4
complain [1]  28/6
complaint [32]  5/22 6/4
6/10 8/11 8/14 8/16 8/19
10/24 11/22 13/23 13/25
14/4 14/5 15/1 15/8 15/13

2

...complaint.....harm

**C**

**complaint... [16]** 17/4 19/19 19/22 20/3 21/22 22/4 25/5 26/1 30/14 36/19 36/21 37/2 37/15 38/3 38/20 39/6
**complaints [2]** 8/5 14/7
**completely [2]** 15/23 16/2
**comported [1]** 7/5
**computer [1]** 1/23
**computer-aided [1]** 1/23
**concealing [1]** 13/4
**concede [1]** 30/11
**conclude [1]** 15/11
**concluded [2]** 33/23 39/21
**concludes [1]** 17/13
**conclusion [1]** 27/9
**conduct [17]** 4/25 13/13 13/22 15/24 21/1 22/8 23/13 24/17 24/18 24/20 24/21 25/10 25/14 25/16 25/18 26/17 33/11
**conducted [3]** 26/14 26/17 26/18
**conducting [1]** 17/25
**conferring [1]** 20/2
**confidential [1]** 37/19
**conflicts [1]** 17/18
**consensual [1]** 37/23
**consider [1]** 17/20
**considered [1]** 24/20
**consult [2]** 18/22 18/24
**consultant [1]** 31/19
**consultation [2]** 20/14 28/22
**context [4]** 21/13 21/14 21/15 32/14
**continued [2]** 2/1 39/1
**continues [1]** 38/15
**continuing [1]** 38/18
**contractor [1]** 31/18
**contractors [2]** 30/24 36/24
**contrary [3]** 15/23 16/2 29/19
**convince [1]** 30/20
**COOLEY [5]** 2/2 2/5 4/9 4/11 4/12
**Cooper [1]** 1/7
**corporate [8]** 16/16 17/10 17/15 26/10 28/2 29/25 29/25 30/10
**corporations [1]** 22/15
**correct [10]** 3/8 8/4 10/8 10/13 10/17 10/21 12/5 12/7 14/6 39/24
**could [14]** 7/4 8/21 8/24 10/5 11/17 11/25 14/24 18/1 34/6 34/11 35/6 37/12 37/12 38/25
**counsel [22]** 3/17 3/22 3/24 4/3 4/8 13/22 15/7 15/16 16/1 16/22 18/19 18/21 18/21 18/25 19/2 20/13 23/4 28/14 28/15 28/22 29/2 29/5
**country [1]** 28/3
**couple [1]** 36/16
**course [3]** 19/13 20/9 38/6
**court [16]** 1/1 1/21 3/1 6/23 7/3 12/18 12/19 20/2 25/1 29/12 31/5 32/5 35/24 35/25 39/22 40/4
**court's [2]** 12/20 19/9
**Courthouse [1]** 1/7
**Courtroom [1]** 2/10
**courts [2]** 31/13 35/3
**coverup [1]** 24/22
**CRC [1]** 40/3

**create [2]** 8/21 8/24
**crisis [1]** 21/17
**criteria [1]** 17/18
**CRR [1]** 40/3
**culture [1]** 26/10
**customer [3]** 9/19 9/22 10/5
**cv [1]** 1/4

**D**

**date [2]** 5/11 5/14
**dates [1]** 5/5
**day [2]** 14/10 19/12
**DE [3]** 10/4 10/6 13/7
**deal [1]** 36/12
**deceitful [1]** 35/7
**December [2]** 6/1 38/4
**decided [1]** 16/1
**decides [1]** 7/6
**decision [2]** 14/1 16/21
**decisions [1]** 7/15
**declaration [2]** 19/14 19/17
**defendant [5]** 1/18 2/4 2/7 26/17 29/18
**defendant's [3]** 4/19 19/14 19/17
**defendants [7]** 4/6 4/13 23/16 23/24 24/14 30/16 39/8
**defense [1]** 15/7
**DEI [1]** 21/12
**depends [1]** 11/25
**Deputy [1]** 2/10
**describes [1]** 33/14
**designed [3]** 23/12 23/13 23/14
**detail [1]** 38/25
**details [3]** 6/7 38/5 38/6
**determined [1]** 28/24
**determines [1]** 7/4
**devoted [1]** 37/24
**did [33]** 3/17 3/18 7/12 13/20 13/21 13/23 15/11 15/22 15/22 15/24 16/24 18/1 18/3 18/6 18/9 18/14 18/18 19/4 21/4 21/15 21/24 21/25 22/13 26/15 26/17 28/9 28/13 28/20 29/22 34/25 35/12 37/6 37/11
**didn't [13]** 8/20 13/1 14/8 16/9 18/4 18/7 18/14 22/10 26/20 28/8 28/12 28/25 32/3
**difference [3]** 10/15 26/22 26/24
**different [1]** 24/7
**directly [4]** 13/13 20/13 21/10 23/15
**director [1]** 17/19
**directors [7]** 12/11 12/15 12/22 17/12 17/17 17/21 30/5
**directors' [2]** 12/10 12/21
**disclose [8]** 8/20 25/7 32/22 33/3 33/5 33/11 33/22 34/14
**disclosed [1]** 10/11
**disclosure [9]** 6/17 7/19 7/23 11/11 31/14 31/22 33/8 34/3 35/21
**disclosures [8]** 5/8 7/9 8/19 9/1 9/14 30/18 30/22 36/23
**disconnect [2]** 39/4 39/6
**discovered [1]** 20/10
**discussed [1]** 39/12
**discusses [1]** 17/5
**discussing [1]** 19/7
**dismissed [1]** 12/19

**dismissing [1]** 4/25
**displeasure [1]** 29/13
**dispute [1]** 23/25
**dissect [1]** 18/12
**distinction [2]** 18/10 31/7
**distinguish [1]** 24/1
**distinguishable [2]** 13/10 32/8
**DISTRICT [5]** 1/1 1/1 1/10 3/2 31/3
**ditch [1]** 35/6
**diversity [1]** 5/9
**docket [1]** 3/10
**documents [1]** 14/18
**does [13]** 8/6 8/7 9/7 9/8 21/4 21/6 23/23 24/1 24/13 28/1 29/10 31/11 36/12
**doesn't [7]** 8/11 24/5 24/12 28/23 30/19 36/17 37/3
**doing [4]** 7/17 9/21 17/25 28/4
**done [10]** 7/2 27/10 27/16 28/1 29/1 29/14 33/3 38/10 38/17 39/2
**down [2]** 6/11 6/13
**Dr. [1]** 20/12
**Dr. Hopkins' [1]** 20/12
**draw [1]** 19/9
**duration [2]** 38/16 39/3
**during [2]** 19/13 20/9
**duty [5]** 23/19 33/2 33/5 33/11 34/14

**E**

**earlier [2]** 8/6 20/11
**easy [1]** 14/17
**efforts [1]** 37/4
**either [1]** 35/15
**election [1]** 17/17
**ELIZABETH [2]** 2/2 4/11
**else [3]** 14/14 35/20 36/4
**employee [10]** 5/23 6/1 6/1 6/2 6/10 31/9 31/19 37/3 37/7 37/7
**Employee 1 [1]** 6/10
**employees [12]** 11/25 15/25 27/9 30/24 31/5 32/10 34/4 34/5 34/17 34/22 34/23 36/24
**employment [1]** 38/7
**encourage [1]** 23/23
**end [3]** 14/10 14/15 38/11
**ended [1]** 29/22
**engage [10]** 16/1 16/21 25/16 30/25 31/5 32/10 34/5 34/17 34/22 34/23
**engaged [12]** 13/21 15/16 23/9 24/5 25/15 28/5 28/22 31/4 31/11 31/14 35/13 36/14
**engages [2]** 24/10 31/19
**engaging [11]** 22/16 27/8 31/2 31/9 31/10 32/11 32/16 33/2 34/17 34/18 34/25
**entire [2]** 16/20 21/13
**entitled [1]** 39/25
**environment [1]** 24/24
**equality [1]** 24/16
**ESG [1]** 13/7
**ESQUIRE [4]** 1/13 1/16 2/2 2/5
**essentially [4]** 12/25 15/14 20/18 38/7
**ethical [2]** 16/19 26/11
**evading [1]** 35/10
**evaluate [14]** 12/12 17/16 18/16 26/8 26/20 26/23 26/23 26/25 26/25 27/5

27/19 28/3 29/21 30/3
**evaluated [1]** 27/7
**evaluation [4]** 26/9 26/15 26/18 28/13
**even [5]** 24/17 32/11 32/23 33/3 33/23
**every [3]** 12/16 12/16 15/19
**everything [1]** 15/20
**EWING [2]** 1/16 4/8
**exactly [2]** 7/13 39/3
**example [3]** 9/10 12/24 29/5
**executive [3]** 7/4 7/6 26/8
**executive's [1]** 27/19
**executives [1]** 22/15
**Exhibit [2]** 19/14 19/17
**exist [2]** 13/2 16/9
**existed [1]** 13/1
**existence [1]** 20/11
**exists [1]** 15/21
**experience [1]** 18/2
**explicit [1]** 27/21
**explicitly [1]** 19/13
**exposed [1]** 38/14
**EXSCIENTIA [6]** 1/3 3/7 3/10 7/12 23/21 38/4
**extent [1]** 6/6
**extreme [1]** 22/24

**F**

**fact [18]** 10/12 13/21 13/23 14/7 14/10 18/14 19/1 19/11 20/17 21/4 21/5 21/11 22/10 22/12 23/6 23/14 29/14 36/13
**facts [8]** 13/9 13/10 15/12 32/7 37/1 37/1 38/23 39/10
**failed [1]** 10/2
**failure [2]** 7/7 13/12
**fall [1]** 35/6
**fallout [6]** 10/11 10/12 31/24 32/4 32/11 32/15
**false [56]**
**falsity [3]** 27/16 29/13 39/11
**Falstaff [1]** 12/24
**favor [1]** 19/10
**FE1 [9]** 5/22 9/3 13/19 15/8 36/20 37/15 37/19 37/24 38/3
**FE1's [1]** 37/25
**FE2 [3]** 37/19 37/20 37/22
**February [5]** 5/4 6/17 8/3 13/25 19/16
**February 14 [1]** 19/16
**February 2024 [3]** 5/4 8/3 13/25
**Federal [2]** 1/21 39/22
**feet [1]** 35/7
**felt [1]** 28/25
**figure [1]** 16/11
**filed [5]** 5/6 5/25 6/3 6/8 36/20
**filings [2]** 5/1 5/18
**find [1]** 19/24
**findings [1]** 32/22
**finds [2]** 27/7 35/24
**Fine [1]** 28/23
**fired [3]** 15/12 15/15 33/4
**firings [1]** 21/15
**firm [4]** 1/13 3/13 3/21 3/21
**first [7]** 5/5 5/25 7/23 8/11 15/7 34/15 36/17
**five [1]** 5/25
**five months [1]** 5/25
**flag [1]** 37/12
**flesh [1]** 37/13
**Floor [2]** 1/14 2/3

**focus [8]** 6/9 7/23 8/13 8/16 10/5 19/19 29/12 29/17
**focused [2]** 6/6 30/14
**focusing [1]** 27/16
**follow [7]** 21/3 21/4 22/7 22/7 22/9 22/10 27/22
**follows [1]** 3/3
**foregoing [1]** 39/24
**foreseeable [2]** 9/8 9/11
**form [8]** 5/6 5/7 5/12 5/18 5/25 6/3 6/8 21/2
**Former [3]** 5/23 6/1 6/9
**forth [1]** 39/10
**fosters [1]** 26/10
**found [2]** 28/4 31/21
**four [2]** 5/10 5/13
**fraud [3]** 6/11 6/14 7/8
**FRENCH [2]** 2/5 4/12
**fruition [2]** 32/1 32/12
**Fs [6]** 5/18 20/18 20/19 23/11 24/11 31/4
**FUKS [5]** 1/13 3/12 3/23 14/23 20/21
**fully [1]** 32/1
**further [4]** 10/24 34/11 36/5 36/10
**future [3]** 4/2 7/7 11/24

**G**

**gap [9]** 5/15 5/19 23/14 23/15 23/17 23/20 23/22 24/15 24/23
**gave [1]** 37/7
**gender [10]** 5/15 5/18 23/14 23/15 23/17 23/20 23/22 24/15 24/16 24/23
**gender-pay [4]** 23/14 23/15 23/17 23/22
**general [3]** 5/9 18/16 34/10
**give [1]** 33/18
**goes [1]** 24/18
**gone [3]** 23/3 23/4 29/2
**Good [6]** 3/5 3/12 4/7 4/14 4/15 15/4
**gory [1]** 38/5
**governance [8]** 16/16 17/10 17/15 28/2 28/3 29/25 30/1 30/10
**Grand [1]** 35/7
**guarantee [1]** 12/15
**guess [1]** 27/13
**guide [1]** 30/12
**guides [4]** 27/13 27/22 27/25 28/14

**H**

**hac [6]** 1/13 2/2 2/5 3/14 3/15 3/19
**hadn't [2]** 10/20 12/4
**half [2]** 13/13 13/15
**half-truth [2]** 13/13 13/15
**hands [1]** 23/25
**hands-on [1]** 23/25
**hanging [1]** 23/6
**happen [3]** 28/8 28/10 34/11
**happened [7]** 10/7 10/8 10/14 22/2 27/20 27/20 29/20
**happens [2]** 7/20 31/24
**happy [5]** 27/14 27/15 29/7 29/8 36/9
**harassing [2]** 15/9 15/25
**harassment [3]** 27/8 37/22 38/15
**hard [1]** 21/23
**harm [4]** 9/16 11/17 12/1 34/8

3

ID: harmed..one

## H

**harmed [1]** 8/25
**has [17]** 5/8 5/8 7/5 22/18 24/9 27/6 29/12 30/3 31/11 31/14 31/15 31/25 32/1 33/10 35/2 35/8 35/8
**hat [1]** 23/6
**have [59]**
**haven't [1]** 39/10
**having [2]** 21/23 23/3
**he [71]**
**he's [11]** 18/21 18/24 23/11 23/25 23/25 24/4 28/10 28/12 29/25 32/16 34/18
**head [4]** 7/21 27/5 27/7 28/10
**hear [1]** 4/20
**Hearing [1]** 1/5
**heartburn [1]** 7/18
**hedge [1]** 33/18
**held [3]** 3/1 31/25 35/3
**help [1]** 11/13
**helpful [4]** 4/23 11/3 15/1 37/8
**her [4]** 6/6 6/7 15/9 38/6
**here [23]** 3/9 5/20 6/20 7/2 9/14 9/24 10/10 17/22 18/9 18/17 19/11 19/20 20/23 21/12 21/21 21/21 22/3 22/11 22/16 23/23 28/8 28/10 32/12
**hid [2]** 28/6 28/11
**high [3]** 12/11 14/8 21/15
**high-level [1]** 14/8
**high-profile [1]** 21/15
**highest [2]** 26/11 26/11
**hiking [2]** 35/5 35/5
**him [7]** 23/15 24/3 27/8 28/14 29/23 37/23 37/25
**himself [1]** 7/5
**hindsight [2]** 6/11 6/14
**hiring [1]** 24/15
**his [8]** 14/8 14/9 15/24 16/1 24/21 26/21 26/21 37/22
**holds [1]** 35/25
**Honor [21]** 3/12 4/1 4/4 4/7 4/17 8/7 10/23 11/3 13/16 14/6 14/20 15/2 15/4 17/3 20/1 22/14 23/8 36/5 36/10 39/14 39/19
**HONORABLE [2]** 1/10 3/1
**Hopkins [18]** 6/18 8/21 14/2 18/2 19/11 20/10 22/22 26/20 28/10 31/2 31/8 32/14 32/16 33/1 33/4 37/21 37/24 38/7
**Hopkins' [2]** 15/24 20/12
**HR [2]** 25/1 39/9
**Hudson [1]** 2/6
**huge [1]** 22/17
**huh [6]** 11/1 11/12 12/8 17/8 18/23 31/17
**human [1]** 30/17
**hypothetical [6]** 31/16 32/9 33/14 35/1 35/2 35/3

## I

**I'll [6]** 4/8 4/20 4/20 19/24 39/12 39/13
**I'm [12]** 3/15 10/18 15/6 16/11 21/23 27/13 27/16 27/18 30/13 30/19 34/15 39/3
**identical [1]** 5/13
**identify [3]** 17/16 18/16 30/3
**illegal [2]** 21/17 33/11

## impede

**impede [1]** 12/1
**implementation [1]** 11/20
**implicit [2]** 15/18 15/21
**important [2]** 5/11 5/19
**improper [1]** 30/25
**impute [1]** 38/21
**inaccurate [2]** 11/8 18/6
**inaccurately [1]** 16/10
**inappropriate [2]** 5/21 5/24
**incident [3]** 21/11 36/25 37/3
**includes [1]** 5/7
**including [2]** 17/16 17/18
**incumbent [1]** 17/17
**independence [1]** 17/19
**independent [3]** 30/24 31/18 36/24
**individually [1]** 17/21
**inevitable [1]** 32/19
**inference [2]** 19/9 19/11
**inferences [2]** 19/9 19/10
**information [3]** 7/10 33/18 37/7
**initiatives [3]** 10/4 13/8 23/22
**integrity [7]** 16/18 18/2 26/11 26/21 26/21 27/6 28/4
**interest [1]** 17/18
**internal [1]** 15/11
**interviewed [1]** 37/7
**introduce [1]** 4/9
**investigated [1]** 7/13
**investigation [15]** 13/22 13/24 14/1 14/11 15/11 20/10 27/16 29/8 29/9 32/22 33/3 33/19 33/22 33/23 34/13
**investing [1]** 10/4
**investment [1]** 10/6
**investor [3]** 27/3 27/4 27/6
**investors [3]** 21/16 21/16 23/18
**invokes [1]** 23/18
**involved [1]** 21/11
**involvement [1]** 20/13
**isn't [1]** 7/7
**isolated [2]** 36/25 37/2
**issue [5]** 12/25 29/10 30/17 39/9 39/9
**issued [2]** 5/16 6/18
**issues [1]** 15/6
**its [8]** 7/12 7/21 9/21 9/21 9/22 23/6 23/21 32/22
**itself [2]** 29/8 34/1

## J

**JERSEY [3]** 1/1 1/8 1/17
**job [1]** 15/24
**John [3]** 1/21 1/21 40/3
**Jones [1]** 13/3
**JUDGE [2]** 1/10 3/2
**Judicial [1]** 2/11
**just [29]** 5/4 6/6 11/10 11/13 12/10 12/18 14/15 15/22 16/2 17/3 18/11 19/19 20/6 20/21 23/5 24/4 24/12 25/13 27/13 27/13 27/22 29/7 30/12 32/3 34/9 34/10 34/12 36/11 39/4

## K

**K-O-O-K-E-R [1]** 12/18
**keep [3]** 29/3 29/6 29/11
**key [5]** 8/23 9/15 11/16 11/25 19/20
**knew [17]** 8/5 9/7 9/22 10/4 22/1 22/4 22/11 22/19 23/1 25/6 26/21 27/8 31/6 31/10

33/4 33/4 36/14
**know [27]** 3/17 5/21 6/4 6/5 6/6 7/19 13/3 14/10 14/18 16/20 19/8 24/4 24/9 24/24 25/25 30/15 30/16 31/21 33/10 35/4 35/6 36/18 37/1 37/12 37/24 38/13 38/16
**knowledge [2]** 20/11 38/21
**known [7]** 9/17 9/22 9/24 10/2 10/3 23/2 23/7
**knows [5]** 32/14 32/15 32/16 32/17 34/18
**Kooker [1]** 12/18
**Ks [1]** 24/11
**Kurz [3]** 1/21 1/21 40/3

## L

**language [2]** 12/14 27/25
**later [2]** 5/12 15/12
**law [13]** 1/13 2/11 3/13 3/21 7/18 9/8 20/2 24/7 24/12 24/13 29/12 32/25 33/7
**laws [2]** 7/8 7/21
**layer [1]** 6/20
**least [1]** 9/8
**leave [1]** 11/16
**leaving [2]** 9/15 12/3
**left [7]** 5/2 6/1 6/8 7/3 36/20 38/8 38/17
**legal [2]** 16/21 17/14
**let [7]** 3/10 4/8 8/15 20/4 20/6 20/6 37/6
**Let's [2]** 25/22 30/21
**letting [1]** 4/5
**level [3]** 12/11 14/8 26/11
**liability [2]** 31/20 34/6
**lie [1]** 37/25
**light [1]** 11/18
**like [12]** 21/1 21/18 22/17 24/14 24/15 24/20 28/16 28/25 30/13 30/19 33/14 38/2
**liking [1]** 28/18
**LITIGATION [1]** 1/4
**little [2]** 20/22 37/11
**living [1]** 7/12
**LLP [4]** 1/16 2/2 2/5 4/11
**local [4]** 3/16 3/22 3/24 4/3
**longer [1]** 6/2
**look [7]** 20/4 20/6 21/9 25/25 26/1 29/20 30/23
**looking [2]** 9/20 27/18
**lose [1]** 21/20
**losing [2]** 8/22 11/25
**lot [1]** 7/18

## M

**MA [1]** 2/3
**made [18]** 7/14 21/22 21/25 22/3 22/5 22/20 23/1 24/11 25/3 25/6 25/9 25/10 28/17 29/16 31/2 31/10 32/23 38/22
**Madison [1]** 1/14
**make [21]** 8/6 10/18 12/13 14/24 16/21 17/11 21/5 21/6 23/16 24/6 24/14 24/19 24/21 29/10 30/4 33/13 33/16 33/17 34/12 36/11 36/12
**makes [2]** 14/1 25/7
**making [2]** 7/18 24/6
**management [1]** 12/12
**mandatory [2]** 27/25 32/20
**many [1]** 29/16
**March [5]** 5/4 5/6 5/12 36/18 36/20

**March 2022 [2]** 5/4 36/18
**March 2023 [1]** 36/20
**March 23 [2]** 5/6 5/12
**MARIE [2]** 1/10 3/2
**marketing [2]** 9/21 9/21
**match [1]** 36/17
**material [6]** 7/9 8/22 8/25 21/16 21/16 23/18
**materiality [1]** 29/12
**materialize [1]** 8/2
**materialized [5]** 9/2 9/6 10/14 10/20 12/4
**matter [6]** 5/5 9/7 9/8 22/2 22/12 39/25
**matters [1]** 29/16
**may [14]** 3/19 28/16 30/13 30/24 31/5 31/19 32/10 34/5 34/17 34/22 34/23 34/23 36/25 37/2
**me [31]** 3/10 4/5 4/21 8/10 8/15 10/1 11/3 11/13 13/12 14/19 16/3 16/5 16/12 17/1 17/2 20/4 20/6 20/6 20/15 22/25 23/5 25/13 25/22 25/24 28/17 29/7 32/24 33/6 34/9 37/6 37/12
**mean [31]** 14/17 16/7 18/1 18/17 19/8 21/8 22/14 23/17 24/2 24/5 25/2 26/17 27/2 27/2 27/10 28/2 28/2 28/11 29/24 30/18 30/19 30/25 33/10 35/4 35/23 38/4 38/19 38/25 39/3 39/5 39/8
**meaningful [2]** 35/8 35/9
**meant [1]** 30/17
**mechanical [1]** 1/23
**meet [4]** 6/21 6/21 6/22 14/8
**member [1]** 15/19
**members' [1]** 16/10
**menacing [1]** 27/9
**MeToo [1]** 21/14
**Michael [1]** 2/11
**might [2]** 4/23 6/8
**misconduct [39]** 7/14 7/19 8/21 8/24 9/3 11/18 15/9 22/17 23/9 24/5 24/10 25/15 25/17 28/5 30/25 31/2 31/10 31/12 31/14 31/19 32/10 32/11 32/12 32/17 33/2 33/14 34/5 34/17 34/18 34/18 34/22 34/24 34/25 35/13 36/14 36/18 36/22 38/6 39/2
**misleading [17]** 8/6 8/20 13/14 13/16 16/5 24/21 28/15 28/18 30/15 30/19 31/1 31/22 32/2 32/11 33/8 35/25 36/1
**missing [1]** 12/2
**misstatements [1]** 5/17
**Mitchell [1]** 1/7
**moment [3]** 17/3 20/1 30/20
**Month [1]** 9/21
**months [2]** 5/25 15/12
**more [7]** 11/9 12/10 12/20 21/1 25/19 25/20 36/22
**morning [6]** 3/5 3/12 4/7 4/14 4/15 15/4
**motion [2]** 1/5 4/19
**Movement [1]** 21/14
**Mr. [13]** 5/23 6/5 6/18 6/19 18/2 8/21 9/4 13/18 14/7 18/1 37/21 37/24 38/7
**Mr. Hopkins [4]** 6/18 37/21 37/24 38/7
**Mr. Nicholson [9]** 5/23 6/5

6/19 8/12 8/21 9/4 13/18 14/7 18/1
**Ms [1]** 3/23
**Ms. [4]** 4/18 4/20 14/23 20/21
**Ms. Fuks [2]** 14/23 20/21
**Ms. Wright [2]** 4/18 4/20
**much [1]** 37/23
**must [9]** 17/13 17/14 17/16 18/8 18/15 18/16 18/20 23/2 27/25
**my [6]** 4/8 18/3 35/10 35/11 35/13 39/5

## N

**name [1]** 3/7
**narrative [1]** 23/21
**nature [1]** 33/20
**nearly [1]** 5/12
**necessarily [1]** 37/18
**need [1]** 8/13
**Neither [1]** 9/2
**never [3]** 26/14 27/20 31/25
**NEW [7]** 1/1 1/8 1/14 1/14 1/17 2/6 2/6
**Newark [1]** 1/17
**newspaper [1]** 7/2
**next [3]** 5/11 11/4 13/24
**Nice [1]** 39/15
**Nicholson [28]** 5/23 6/5 6/19 8/5 8/12 8/21 9/4 13/18 14/7 15/7 15/8 15/15 16/8 18/1 18/18 19/12 20/10 21/4 21/6 21/24 21/25 22/10 23/3 26/17 28/11 29/9 32/15 32/17
**Nicholson's [1]** 13/12
**njd.uscourts.gov [1]** 1/21
**no [13]** 4/1 6/2 9/23 13/20 22/3 23/8 23/19 25/4 29/4 29/5 31/11 32/3 33/10
**nobody [1]** 31/14
**Nominating [1]** 17/10
**nondisclosure [1]** 14/17
**none [3]** 12/23 25/14 27/20
**North [3]** 9/20 10/9 22/2
**not [60]**
**note [1]** 5/20
**nothing [18]** 9/16 11/9 12/14 12/20 13/20 14/4 14/6 22/6 27/10 28/6 28/14 36/5 36/10 36/21 38/10 38/17 39/2 39/2
**now [4]** 15/11 15/15 15/18 21/16
**number [2]** 1/3 12/17

## O

**O'Leary [1]** 2/11
**oath [1]** 37/25
**objection [2]** 3/23 4/1
**obligation [1]** 32/22
**obtain [1]** 18/25
**obvious [1]** 39/5
**occurred [3]** 31/15 36/19 38/15
**occurring [1]** 33/15
**offhand [1]** 32/7
**officer's [1]** 26/9
**officers [2]** 25/15 25/16
**Official [2]** 1/21 39/22
**okay [47]**
**omission [3]** 8/6 34/21 35/16
**once [2]** 24/9 33/13
**one [14]** 1/17 5/5 5/21 8/20 11/15 14/17 18/12 18/13 20/1 31/11 33/10 34/11

4
...one.....talk

**O**

**one... [2]** 36/17 37/3
**only [1]** 22/15
**open [1]** 3/1
**opposing [1]** 9/19
**opposite [1]** 22/12
**oranges [1]** 20/22
**order [1]** 4/24
**other [18]** 15/9 15/16 17/11
 17/14 17/19 20/13 24/2
 25/19 28/22 30/4 30/25 32/6
 32/9 32/13 33/1 33/16 37/16
 38/9
**Otherwise [2]** 24/7 25/9
**our [14]** 7/11 12/1 12/17
 25/14 25/16 28/9 30/24
 33/25 34/4 34/5 34/8 34/16
 34/22 34/23
**out [5]** 16/11 23/21 27/7
 28/5 37/13
**outline [1]** 14/9
**outside [13]** 13/22 15/16
 18/19 18/20 18/25 19/2
 20/13 23/4 28/13 28/15
 28/22 29/2 29/5
**oversee [1]** 13/4
**overseeing [1]** 13/7
**own [1]** 16/1

**P**

**P.A [1]** 1/13
**P.L.C [1]** 1/3
**p.m [1]** 39/21
**paragraph [17]** 8/13 8/18
 11/22 17/4 17/9 17/15 18/22
 19/24 19/25 20/3 20/5 26/1
 27/19 29/20 29/24 30/9
 30/23
**parrot [1]** 30/16
**part [1]** 34/16
**particularity [1]** 15/10
**particularly [1]** 27/21
**past [2]** 18/8 27/20
**Pause [1]** 20/8
**pay [9]** 5/15 5/18 23/14
 23/15 23/17 23/20 23/22
 24/15 24/23
**people [4]** 22/16 28/6 28/7
 38/9
**per [1]** 14/18
**perfectly [1]** 15/20
**perform [1]** 12/16
**performance [4]** 17/20
 26/9 27/19 29/22
**performs [1]** 12/22
**period [8]** 5/3 5/3 5/5 5/11
 5/14 38/11 38/11 38/16
**periodically [1]** 17/19
**person [4]** 28/4 37/16
 37/20 37/22
**perspective [1]** 7/17
**persuade [2]** 28/17 35/21
**pieces [1]** 5/19
**place [6]** 5/22 16/15 20/20
 25/21 27/4 35/2
**plaintiff [9]** 1/15 3/11 14/18
 18/11 23/5 27/14 29/7 30/12
 36/12
**plaintiff's [4]** 19/10 28/18
 33/21 35/11
**plaintiffs [8]** 3/13 6/9 6/20
 7/16 9/9 11/6 12/23 37/18
**Plaza [1]** 1/17
**please [2]** 4/3 4/22
**pled [1]** 13/24
**podium [1]** 4/21
**point [4]** 9/10 12/23 12/24

21/10
**policy [3]** 7/17 9/19 24/15
**political [3]** 9/23 9/23 13/4
**position [10]** 7/20 8/1
 10/10 10/19 14/3 33/21
 33/24 33/25 35/11 35/13
**possibilities [1]** 33/9
**possible [1]** 35/6
**pot [1]** 18/12
**potential [2]** 9/16 17/18
**predict [1]** 7/7
**present [2]** 2/9 35/3
**presents [1]** 35/1
**president [2]** 28/4 28/5
**press [4]** 6/17 8/3 15/13
 15/17
**pretended [1]** 12/25
**prevented [1]** 28/14
**previously [2]** 9/18 10/14
**Pride [1]** 9/21
**prior [3]** 20/11 21/11 29/16
**pro [6]** 1/13 2/2 2/5 3/14
 3/15 3/19
**problem [1]** 18/15
**procedure [1]** 28/20
**proceedings [4]** 1/23 3/1
 39/21 39/25
**process [9]** 15/21 15/23
 16/15 20/20 21/3 22/6 22/7
 22/8 25/20
**produced [1]** 1/23
**profile [1]** 21/15
**promotes [2]** 24/25 26/11
**proper [1]** 28/20
**properly [3]** 26/20 26/23
 26/25
**provides [1]** 18/2
**provision [1]** 3/19
**Prudential [1]** 35/4
**PSLRA [2]** 6/22 6/24
**public [1]** 16/18
**puffery [2]** 24/20 25/12
**punish [1]** 7/16
**purpose [1]** 17/11
**puts [1]** 7/20
**putting [1]** 25/18

**Q**

**question [6]** 18/3 35/10
 35/11 35/14 36/11 37/6
**questioning [1]** 39/5
**questions [3]** 7/22 11/2
 36/9
**quite [3]** 6/9 22/12 24/7
**quote [1]** 27/15
**quote-unquote [1]** 27/15

**R**

**raise [1]** 37/11
**rather [3]** 20/14 28/11
 28/21
**RDR [1]** 40/3
**RDR-RMR-CRR-CRC [1]**
 40/3
**re [3]** 1/3 3/9 17/17
**re-election [1]** 17/17
**read [4]** 16/7 17/22 20/6
 32/5
**reading [1]** 27/3
**reality [2]** 6/12 6/15
**realize [1]** 3/19
**really [16]** 5/4 5/17 6/7 6/10
 7/3 7/16 8/13 8/16 9/1 11/8
 12/10 13/1 13/4 14/4 27/11
 27/13
**reason [1]** 10/23
**reasonable [3]** 7/9 19/10
 19/11

reasons **[2]** 8/20 19/5
**recall [3]** 32/7 32/8 32/8
**received [1]** 13/19
**recite [2]** 12/10 12/21
**recommend [1]** 30/4
**recommendations [3]**
 12/13 17/11 30/5
**record [1]** 39/25
**recorded [1]** 1/23
**red [1]** 37/12
**refer [1]** 14/25
**reference [1]** 11/21
**referenced [1]** 37/16
**referencing [1]** 5/1
**referring [2]** 30/7 34/2
**refers [1]** 5/7
**regardless [1]** 38/15
**related [2]** 6/7 6/16
**relating [2]** 17/12 30/5
**relationship [2]** 37/21
 37/23
**relationships [1]** 20/12
**release [4]** 6/17 8/3 15/13
 15/17
**relevant [1]** 38/20
**rely [1]** 9/9
**relying [1]** 17/2
**remain [2]** 38/12 38/13
**remaining [1]** 5/10
**remains [1]** 4/24
**remember [1]** 15/15
**remind [1]** 10/1
**remuneration [3]** 16/16
 26/6 27/5
**render [1]** 37/3
**RENÉE [2]** 1/10 3/2
**report [7]** 5/15 5/19 13/12
 13/19 23/20 23/20 23/22
**reported [5]** 6/5 7/14 9/3
 32/16 38/9
**reporter [3]** 1/21 6/23 40/4
**REPORTER'S [1]** 39/22
**Reporter/Transcriber [1]**
 40/4
**reports [1]** 5/2
**representation [1]** 18/6
**represented [1]** 16/10
**representing [1]** 20/19
**reputation [2]** 8/25 34/8
**reputational [2]** 9/16 11/17
**require [4]** 3/16 7/8 7/9
 31/13
**required [7]** 15/20 16/21
 18/21 18/21 18/24 19/9 22/7
**requirement [1]** 4/2
**requirements [1]** 17/19
**requires [1]** 29/12
**resign [1]** 19/6
**resigned [2]** 6/19 19/12
**resources [1]** 30/17
**respect [3]** 10/9 12/9 26/20
**respond [2]** 36/7 37/9
**response [2]** 9/5 36/14
**responsibilities [5]** 12/11
 12/21 14/8 14/9 16/11
**responsibility [1]** 12/16
**responsible [1]** 23/12
**responsive [1]** 11/2
**result [4]** 10/5 11/17 13/25
 26/19
**results [1]** 22/1
**retain [1]** 17/13
**retaining [1]** 11/25
**revealed [1]** 9/24
**review [3]** 17/20 27/18
 39/12
**reviewed [2]** 3/18 18/2
**right [31]** 3/5 3/9 4/6 4/14

4/19 6/20 7/1 7/8 7/17 8/2
 8/15 9/17 10/16 14/23 20/4
 23/10 24/4 25/1 25/17 27/6
 28/8 30/11 30/21 33/12
 34/19 35/17 35/19 36/4 37/5
 37/17 39/15
**rise [2]** 3/4 39/20
**risk [27]** 5/8 7/23 8/19 8/22
 8/25 9/1 9/11 9/14 9/17 9/22
 9/24 10/3 10/11 10/14 11/10
 11/13 11/15 30/18 30/21
 31/14 31/22 32/1 32/9 34/3
 35/9 36/23 38/14
**risks [3]** 8/2 8/13 10/2
**Riverfront [1]** 1/17
**RMB [1]** 1/4
**RMR [1]** 40/3
**Roney [1]** 2/10
**ROSEN [3]** 1/13 3/13 3/21
**routine [1]** 5/18
**Rule [4]** 6/21 6/21 6/24
 6/24
**rules [1]** 3/18

**S**

**said [7]** 6/18 7/11 7/13 28/3
 28/5 31/4 32/5
**same [3]** 3/21 19/12 21/17
**SARA [2]** 1/13 3/12
**SARAH [2]** 1/16 4/7
**satisfy [1]** 38/20
**SAUL [2]** 1/16 4/8
**save [1]** 10/24
**saw [1]** 15/25
**say [18]** 3/7 15/19 15/24
 18/13 24/13 27/2 27/22 29/4
 30/16 31/11 31/13 32/3 32/6
 32/9 34/16 37/6 37/14 38/2
**saying [11]** 12/6 14/15
 21/24 32/18 32/21 32/23
 33/1 33/6 33/18 34/12 34/15
**says [28]** 15/14 15/14
 15/17 16/20 18/17 18/19
 18/20 18/21 19/13 19/13
 20/9 23/5 23/19 24/12 24/18
 26/8 27/4 27/13 27/24 28/21
 29/19 30/24 31/3 32/20 33/7
 34/10 35/4 37/20
**se [1]** 14/18
**sea [1]** 32/24
**seat [1]** 3/6
**SEC [2]** 5/1 5/18
**second [3]** 6/3 20/7 36/19
**securities [4]** 1/4 7/8 7/8
 7/21
**see [17]** 3/18 14/19 16/8
 18/17 20/25 20/25 21/9
 21/18 22/4 22/8 22/11 25/4
 27/21 29/20 29/21 32/19
 39/15
**seek [3]** 18/19 18/20 19/2
**seem [6]** 32/18 32/21 32/23
 33/5 36/12 39/9
**seems [4]** 22/24 23/5 25/13
 29/7
**September [2]** 1/8 40/3
**serve [1]** 17/17
**serves [1]** 30/14
**set [1]** 39/10
**sexual [2]** 27/8 37/22
**sexually [1]** 15/25
**she [13]** 6/2 6/5 6/8 37/20
 37/23 37/24 37/24 38/7 38/7
 38/8 38/8 38/9 38/16
**short [1]** 23/16
**should [6]** 3/24 27/10
 28/24 28/25 29/1 37/13
**show [8]** 16/3 16/5 16/12

17/1 17/1 20/15 25/22 25/24
**showing [1]** 6/25
**shows [1]** 32/14
**shrift [1]** 23/16
**sight [1]** 21/21
**signed [4]** 23/11 31/8 33/4
 36/13
**significant [2]** 31/20 34/6
**similar [1]** 9/24
**simply [2]** 31/23 34/9
**single [2]** 12/16 12/16
**situation [1]** 20/12
**small [4]** 21/13 22/25 23/2
 23/6
**so [81]**
**some [2]** 7/22 15/6
**someone [1]** 9/15
**something [9]** 7/19 21/18
 23/17 24/15 29/19 31/15
 33/19 35/2 37/13
**sort [6]** 5/10 12/1 21/1
 30/16 32/24 37/11
**sound [1]** 30/19
**Southern [1]** 31/3
**SOX [5]** 5/8 14/16 35/20
 35/23 35/25
**specialist [1]** 25/2
**specific [10]** 6/6 7/22 9/11
 13/20 24/14 24/14 25/19
 25/20 36/25 38/3
**specifically [2]** 13/7 20/5
**specifics [1]** 36/22
**speculate [1]** 37/8
**spoke [1]** 37/18
**stance [1]** 9/23
**standards [4]** 7/5 7/12
 11/19 26/12
**start [2]** 3/10 4/20
**started [1]** 38/3
**state [2]** 12/21 38/25
**stated [2]** 16/15 37/24
**statement [44]**
**statements [50]**
**states [4]** 1/1 1/10 3/2
 31/15
**statistics [1]** 23/20
**stay [1]** 30/13
**STEM [1]** 23/23
**stenography [1]** 1/23
**step [2]** 4/24 34/11
**still [2]** 22/3 27/9
**stock [1]** 21/19
**story [1]** 7/2
**strategies [1]** 12/1
**strategy [1]** 11/20
**Street [1]** 2/3
**Streets [1]** 1/7
**struggling [1]** 27/14
**success [1]** 11/24
**such [2]** 23/6 32/10
**sudden [1]** 24/10
**sufficient [5]** 15/23 16/18
 33/18 37/1 39/10
**suggest [1]** 12/22
**Suite [1]** 1/17
**SULLIVAN [2]** 1/16 4/8
**Supp [1]** 12/19
**sure [6]** 7/25 10/18 15/2
 25/2 34/12 39/3

**T**

**take [5]** 4/23 13/23 20/20
 26/9 39/13
**taken [1]** 35/2
**takes [1]** 20/20
**talent [5]** 8/23 9/15 11/16
 12/2 12/2
**talk [3]** 13/12 22/14 25/22

5
filed..yourself

**T**

**talked [1]** 36/8
**talking [6]** 9/2 18/7 18/8 20/22 23/22 24/16
**talks [1]** 26/3
**Target [13]** 9/10 9/10 9/17 9/18 9/20 10/2 10/12 13/6 16/14 21/9 21/9 21/10 22/1
**Target's [1]** 9/19
**Tell [2]** 8/10 34/9
**telling [1]** 32/4
**tells [1]** 18/15
**Tenaris [1]** 31/3
**terminate [2]** 7/6 14/2
**terminated [4]** 6/19 8/22 19/6 19/12
**termination [5]** 7/15 8/2 14/12 32/19 32/20
**terminations [1]** 14/12
**terms [2]** 18/12 27/22
**terrorized [1]** 38/7
**Thank [12]** 3/6 4/4 4/22 14/22 15/4 36/6 37/5 39/14 39/16 39/17 39/18 39/19
**them [10]** 8/22 10/14 11/25 12/22 14/25 22/6 24/6 25/11 25/11 36/10
**themselves [1]** 4/9
**theory [2]** 7/3 10/24
**therein [1]** 29/9
**these [27]** 5/17 14/8 14/11 15/18 15/21 15/25 21/1 21/22 21/25 22/5 22/20 23/1 24/5 24/19 25/5 25/9 25/10 25/11 27/13 27/22 27/24 28/11 30/20 36/13 38/17 38/22 39/1
**they're [8]** 14/17 18/7 18/8 21/2 21/3 23/2 27/15 38/18
**they've [1]** 33/23
**thing [4]** 7/17 12/2 13/24 18/13
**things [7]** 9/2 19/7 21/15 24/14 32/18 32/24 36/16
**think [40]** 4/23 7/17 9/9 11/21 13/15 14/16 14/17 18/9 18/11 19/8 19/8 19/10 19/19 20/21 20/22 23/16 23/24 23/24 24/7 25/7 25/19 27/3 27/10 27/11 29/11 30/18 31/17 31/21 32/6 32/8 35/10 35/23 36/2 37/8 38/3 38/4 38/12 38/24 39/4 39/8
**third [3]** 5/14 31/21 31/25
**this [70]**
**though [2]** 9/12 35/11
**thought [1]** 37/13
**threat [1]** 38/14
**three [1]** 5/4
**through [2]** 22/15 39/3
**throughout [2]** 38/6 38/10
**throw [1]** 18/11
**tied [1]** 12/2
**time [13]** 6/2 15/5 21/23 21/23 21/25 22/5 22/20 25/3 25/5 29/16 31/1 31/6 31/8
**timeline [2]** 38/2 38/24
**timing [3]** 5/19 36/17 36/22
**today [3]** 3/24 4/5 39/12
**told [3]** 5/23 8/12 15/8
**took [3]** 5/22 15/16 22/24
**top [1]** 22/16
**towards [1]** 9/21
**Transcriber [1]** 40/4
**transcript [2]** 1/23 39/24
**transcription [1]** 1/23
**transpired [1]** 27/15

**traumatized [1]** 38/8
**treated [1]** 24/16
**triple [1]** 6/20
**triple-layer [1]** 6/20
**true [2]** 34/22 34/24
**truth [2]** 13/13 13/15
**trying [8]** 7/16 14/4 16/11 25/13 29/11 30/13 38/21 38/22
**Tuesday [1]** 1/8
**turn [4]** 7/21 12/16 25/13 30/21
**turning [1]** 39/9
**two [11]** 5/3 5/17 5/19 8/20 8/24 9/1 11/16 22/16 32/18 32/23 33/9
**two-year [1]** 5/3
**type [1]** 24/5
**typically [1]** 24/20

**U**

**U.S [1]** 1/7
**uh [6]** 11/1 11/12 12/8 17/8 18/23 31/17
**uh-huh [6]** 11/1 11/12 12/8 17/8 18/23 31/17
**UK [1]** 23/19
**ultra [1]** 23/3
**uncharged [1]** 33/11
**uncorrected [1]** 38/18
**under [9]** 9/8 16/15 28/14 29/4 29/5 32/24 37/25 38/4 39/13
**understand [5]** 8/1 11/13 19/3 21/24 34/12
**understanding [2]** 10/19 21/23
**undo [2]** 21/17 21/18
**unfolded [1]** 30/13
**UNITED [3]** 1/1 1/10 3/2
**Unless [1]** 27/20
**unlike [1]** 22/1
**unquote [1]** 27/15
**until [4]** 8/2 8/3 15/12 38/11
**up [5]** 7/12 11/10 15/7 29/22 36/17
**upon [1]** 17/2
**us [2]** 24/18 36/10
**use [2]** 28/20 29/5
**used [2]** 21/16 28/13
**uses [1]** 27/25
**using [2]** 17/18 28/15

**V**

**various [1]** 16/8
**vendors [1]** 30/24
**versus [3]** 10/11 10/15 28/18
**very [4]** 5/9 14/8 37/23 38/3
**vice [3]** 1/13 2/2 2/5
**victim [1]** 37/22
**violated [1]** 21/6
**vires [1]** 23/3

**W**

**Wait [1]** 19/15
**want [14]** 4/21 5/20 7/23 8/16 10/18 11/2 19/19 26/4 26/5 33/16 34/11 34/12 35/21 36/7
**wants [1]** 18/11
**warn [2]** 35/5 35/5
**warned [2]** 11/14 11/15
**warning [5]** 31/18 31/23 32/9 35/8 35/9
**wasn't [1]** 31/22
**way [3]** 21/17 23/4 23/21
**we'll [1]** 14/19

**we've [2]** 36/7 39/12
**went [7]** 15/15 16/24 22/3 23/21 28/16 29/8 29/9
**where's [1]** 22/19
**whether [8]** 16/17 16/18 17/20 18/2 26/10 27/6 38/15 38/16
**while [2]** 38/13 39/1
**whole [2]** 38/16 39/9
**why [12]** 8/8 8/10 8/10 9/13 10/23 13/17 17/24 18/4 19/6 19/6 21/21 38/22
**wide [2]** 36/24 37/4
**will [8]** 20/20 26/8 26/9 27/18 29/4 29/21 31/24 32/4
**Williams [4]** 31/21 31/23 32/4 32/7
**witness [1]** 37/19
**women [2]** 23/23 24/16
**women's [1]** 23/23
**words [2]** 12/20 33/1
**work [3]** 12/1 14/5 24/24
**working [1]** 38/3
**workplace [1]** 24/17
**worried [1]** 38/8
**worse [1]** 7/20
**wouldn't [4]** 10/24 38/19 38/19 38/23
**WRIGHT [4]** 2/2 4/11 4/18 4/20
**wrong [1]** 26/19
**wrongdoer [1]** 28/12

**Y**

**Yards [1]** 2/6
**yeah [8]** 3/20 8/5 11/23 15/3 27/7 30/2 34/7 36/3
**year [2]** 5/3 5/11
**yes [12]** 3/7 4/17 4/22 11/12 14/20 17/7 19/4 23/19 26/16 30/9 35/16 35/18
**yet [5]** 9/6 10/20 12/4 16/1 37/21
**York [4]** 1/14 1/14 2/6 2/6
**you [103]**
**you'd [1]** 4/3
**you'll [1]** 4/16
**you've [1]** 14/25
**yourself [1]** 30/11